[No. 17569. Department Two. February 3, 1923.]

PENN MUTUAL LIFE INSURANCE COMPANY, *Plaintiff*, v. JOHN P. DUKE, as *Supervisor of Banking, Appellant*, LAURA B. STAYTON et al., *Respondents*.[1]

PAYMENT (8)—APPLICATION—COLLATERAL SECURITIES—RIGHTS OF HOLDER—CONTRACT—CONSTRUCTION. A debtor's contract with a bank relating to the application of proceeds of collateral security, as specified in three paragraphs, considered as a whole, was intended to be dependent upon each payment being made in the order indicated, where the bank held collateral security and life insurance policies to secure notes aggregating $29,552.87 and interest, and a further advance of $2,212.30 for insurance premiums; and all collateral except the insurance policies was put up in trust to secure a bond issue, and it was agreed that the bank should pay itself from the proceeds of the bonds, (1) $25,000 in full payment of the notes, and (2) $3,000 and interest due on another note; and (3) it was further agreed "that the balance of the indebtedness . . . aggregating $8,247.56" and any further advances for insurance premiums ". . . shall become a first lien on the life insurance policies,"

[1] Reported in 212 Pac. 557.

which, upon the death of insured, was to be deducted from the amount realized on the policies and the balance paid to the representatives of the deceased; hence, upon default in making the first payment, the policies stood as security for the "balance" of the indebtedness, and not alone for the $8,247.56; especially in view of the further provision in paragraph 3 that the debtor, upon payments of the amounts mentioned in said paragraph, "shall be fully released and discharged from his obligations."

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered August 12, 1922, upon findings in favor of certain defendants, in an action of interpleader, tried to the court. Reversed.

*Guy E. Kelly, Thomas MacMahon,* and *F. D. Oakley,* for appellant.

*Hayden, Langhorne & Metzger,* for respondent Laura B. Stayton.

PEMBERTON, J.—It appears that in October, 1919, L. Y. Stayton, now deceased, was indebted to the Scandinavian-American Bank of Tacoma upon sixteen promissory notes in the amount of $33,247.46, including interest and premiums paid by the bank on certain life insurance policies. At that time the bank held as collateral security two insurance policies upon the life of L. Y. Stayton, which amounted at the time of his death to the sum of $22,453.14, which sum was paid into court by the Penn Mutual Life Insurance Company and is the subject of controversy in this action.

L. Y. Stayton was engaged in the cement pipe business in Tacoma, and the bank also held a deed to the real property on which his plant was situated, and a bill of sale of a large quantity of the manufactured product, as collateral security for the payment of the indebtedness due the bank.

In November, 1919, L. Y. Stayton incorporated his business under the name of L. Y. Stayton Company and agreed with the Oscar P. Dix Company to issue

bonds in the sum of $100,000, secured by deed of trust covering the plant, patents, machinery, manufactured products and other property, and the Dix Company agreed to purchase $60,000 worth of these bonds at eighty-five, and to pay for same thirty, sixty and ninety days after the execution of the bonds. On or about October 22, the bank conveyed all the collateral held by it, with the exception of the insurance policies, to L. Y. Stayton, and L. Y. Stayton and wife conveyed title to the L. Y. Stayton Company. On November 1 a deed of trust was executed by the L. Y. Stayton Company securing the bond issue of the company upon all its real and personal property, and the bonds were delivered to the Scandinavian-American Bank under the following agreement:

"This agreement made and entered into by and between Scandinavian-American Bank of Tacoma, a corporation, party of the first part, and L. Y. Stayton Company, a Washington corporation, and L. Y. Stayton, individually, parties of the second part,

"Witnesseth:

"That whereas the parties of the second part have deposited with the party of the first part sixty (60) mortgage bonds of the L. Y. Stayton Company of the denomination of $500 each and thirty (30) mortgage bonds of the L. Y. Stayton Company of the denomination of $1,000 each, due ten (10) years from November 1, 1919, and bearing seven (7) per cent. interest per annum.

"It is understood and agreed that the above bonds are to be delivered to Oscar P. Dix Co., of Seattle, Washington, pursuant to the terms of the certain agreement, entered into between Oscar P. Dix Co. and L. Y. Stayton Company, dated the 15th day of October, 1919, and which agreement and payments due thereunder has heretofore been duly assigned by the parties of the second part to the party of the first part. The assignment of the contract, the payments due thereunder and the delivery of the bonds herein mentioned

to the party of the first part, is for the purpose of securing the payment of the following indebtedness, evidenced by notes given by L. Y. Stayton, amounting to the sum of $29,552.84 principal, with accrued interest amounting to $1,482.39, and more particularly described as follows:

| Date | Amount |
| --- | --- |
| August 16, 1916 | $ 1,500.00 |
| September 5, 1916 | 832.95 |
| September 18, 1916 | 1,000.00 |
| October 5, 1916 | 1,000.00 |
| October 16, 1916 | 1,000.00 |
| November 1, 1916 | 1,500.00 |
| November 10, 1916 | 500.00 |
| November 25, 1916 | 600.00 |
| December 9, 1916 | 600.00 |
| December 15, 1916 | 250.00 |
| December 22, 1916 | 600.00 |
| January 4, 1917 | 500.00 |
| March 16, 1917 | 1,453.34 |
| December 31, 1913 | 10,000.00 |
| September 20, 1915 | 8,100.00 |
| December 1, 1917 | 116.58 |
| Total | $29,552.87 |

"And further to secure the sum of $2,212.30 heretofore advanced by the party of the first part as premiums on the following described insurance policies on the life of L. Y. Stayton:

"Policy No. 71493 for $10,000.00 in the Penn. Mutual Life Insurance Company, dated June 30, 1915.

"Policy No. 599583-½ for $15,000.00 in the Penn. Mutual Life Insurance Company, dated July 13, 1915.

"And further to secure the sum of $3,000.00, loaned to the L. Y. Stayton Company on note dated October 21, 1919, and the sum of $350.00, evidenced by note dated November 7, 1919, together with interest, by party of the first part as provided in said notes.

"Now, therefore, it is hereby agreed between the parties hereto, as follows:

"1. That upon the payment to the party of the first part of the sums agreed to be paid by Oscar P. Dix Co., under its agreement hereinbefore referred to of October 15, 1919, that the party of the first part shall pay to itself the sum of $25,000.00 in full payment of the sixteen (16) notes herein enumerated, amounting to the sum of $29,552.87, and interest amounting to $1,482.39, and thereupon the notes referred to shall be cancelled, paid and surrendered to the parties of the second part.

"2. That out of any other funds that may be paid to the party of the first part by Oscar P. Dix Co., under its agreement of October 15, 1919, shall be paid the note of L. Y. Stayton Company dated October 21, 1919, for the sum of $3,000.00 and interest, and the note of L. Y. Stayton Company dated November 7, 1919, amounting to $350.00 and interest, together with any other indebtedness that has heretofore been incurred or may hereafter be incurred in connection with the issuance and delivery of the bonds of L. Y. Stayton Company herein referred to, and the remaining sum received from the said Oscar P. Dix Co., shall be credited and paid to the parties of the second part.

"3. It is further agreed between the parties hereto that the balance of the indebtedness of L. Y. Stayton, in principal and interest on the notes herein enumerated, amounting to $6,035.26, and the sum of $2,212.30, premiums heretofore paid on the life insurance policies of L. Y. Stayton, herein referred to, aggregating the sum of $8,247.56, together with any further sums which the party of the first part may pay or cause to be paid as premiums or otherwise on the policies of insurance herein referred to and described, shall become a first lien on the life insurance policies; and upon the death of the insured, the party of the first part shall deduct from the amount realized, paid on account of said insurance policies to the party of the first part, said sum of $8,247.56, together with any payments of premiums hereafter made, together with interest on said sums at the rate of six (6) per cent per annum and shall pay the balance realized from said policies to the representatives of the estate of the said L. Y. Stayton.

It is understood, however, that the indebtedness of $8,247.56 shall be payable only out of the proceeds of said insurance policies, unless the said L. Y. Stayton, the insured, shall elect to pay the sums charged against the insurance policies, in which event the policies shall be surrendered to him by the party of the first part, and thereupon the said L. Y. Stayton shall be fully released and discharged from his obligations to the party of the first part.''

It is contended by respondent that, under paragraph three of this agreement, the life insurance policies held as collateral security for the payment of the indebtedness to the bank, were released, excepting as to the amounts provided in paragraph three, and the trial court, holding to this theory, directed the payment of all over and above this amount to Laura B. Stayton, respondent, amounting to $10,739.63.

The contract directs the application of the money to the indebtedness and the order of payment as follows: First. The first $25,000 was to be applied in full payment of the sixteen promissory notes and they were to be cancelled and surrendered. Second. Out of any other funds that may be paid to the bank there should be paid the indebtedness of L. Y. Stayton and L. Y. Stayton Company, the remaining sums to be paid to L. Y. Stayton and L. Y. Stayton Company. The balance of the indebtedness in the amount of $8,247.56 still remaining was not to be paid until after the death of L. Y. Stayton, and would then be payable out of the proceeds of the insurance policies, and the balance realized from the insurance policies was to be paid to the representative of the estate of L. Y. Stayton. Or the insured had the power to elect to pay the balance, whereupon the insurance policies were to be surrendered to him and L. Y. Stayton would thereby be fully released and discharged from his obligations to the bank.

Our attention is especially called to the fact that it is provided in paragraph three of the contract that the remainder of the Stayton indebtedness and interest thereon, together with premiums paid upon the policies of insurance by the bank,

"shall become a first lien upon the life insurance policies, and upon the death of the insured . . . . the bank shall deduct . . . . $8,247.56 . . . . together with payments of premiums . . . . together with interest . . . . and shall pay the balance to the representatives of the estate of L. Y. Stayton. It is understood, however, that the indebtedness of $8,247.56 shall be payable only out of the proceeds of said insurance policies unless the said L. Y. Stayton, the insured, shall elect to pay the sums charged against the insurance policies, in which event the policies shall be surrendered to him."

Paragraph three, however, provides that upon the payment of the amounts mentioned in that paragraph, "the said L. Y. Stayton shall be fully released and discharged from his obligations." But we find, according to the provisions in paragraph one, that Stayton could be released and discharged from his indebtedness only in the event the bank had been paid the $25,000 therein provided to be paid.

Paragraph one provides for the payment of the $25,000. Paragraph two provides "that out of any other funds that may be paid" to the bank the indebtedness of the L. Y. Stayton Company is to be paid. And paragraph three contains the following words: "the balance of the indebtedness of L. Y. Stayton," which expression determines its relation to the payment of the $25,000 mentioned in paragraph one.

Paragraph three cannot be considered separate and apart from the other provisions of the contract and the contract must be considered as a whole.

"A contract must be construed as a whole, and the intention of the parties is to be collected from the entire instrument and not from detached portions, it being necessary to consider all of its parts in order to determine the meaning of any particular part as well as of the whole." 13 C. J. 525.

The contract, considered as a whole, shows that the three paragraphs were intended to be dependent upon each being performed in their order as indicated by their numbers. The insurance policies in question were held as collateral security for the payment of the indebtedness due the bank, and the provisions in paragraph three depending upon the payments mentioned in paragraphs one and two, and this indebtedness not having been paid, the proceeds from the insurance policies should be applied first to the payment of the indebtedness due the bank.

The judgment will be reversed, and the trial court directed to enter judgment for appellant in accordance with the views herein expressed.

FULLERTON, PARKER, and TOLMAN, JJ., concur.