[No. 18622. *En Banc.* December 19, 1924.]

JOHN P. DUKE, *as Supervisor of Banking etc., Appellants,* v. L. Y. STAYTON COMPANY *et al., Respondents.*[1]

FRAUDULENT CONVEYANCES (40)—DEEDS—WITHHOLDING FROM RECORD—SUBSEQUENT CREDITORS. A quitclaim deed, given to a bank as a mortgage, and withheld from record in order to give the mortgagor credit and enable it to continue business, pending the sale of proposed bonds to replace the security, though not originally intended as a fraud upon creditors, becomes fraudulent as to subsequent creditors dealing with the mortgagor on the faith of the credit from apparent ownership of the property; and the subsequent creditors without knowledge of the mortgage deed are protected, notwithstanding other security arranged and given to secure bonds, covering the same and further indebtedness, which failed and fell through by reason of inability to sell the bonds (TOLMAN, FULLERTON, and MACKINTOSH, JJ., dissent).

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered February 16, 1923, in favor of the defendants, in an action to foreclose a mortgage, tried to the court. Affirmed.

*Guy E. Kelly, Thomas MacMahon,* and *F. D. Oakley,* for appellants.

*Hayden, Langhorne & Metzger,* for respondents.

[1]Reported in 231 Pac. 171.

HOLCOMB, J.—Appellant, as liquidator of the insolvent Scandinavian-American Bank of Tacoma, instituted this action for the purpose of foreclosing an instrument, in form a quitclaim deed, as a mortgage, for the security of the payment of a note of $3,000 and interest, given the bank by L. Y. Stayton Company on October 17, 1919; and also for the security of sixteen promissory notes given the bank by Stayton individually, aggregating $29,552.87, and interest. The property described in the quitclaim deed was set forth in the complaint. It was prayed that the deed be decreed to be a first and prior mortgage lien upon the real property described in the complaint, and that it be foreclosed and the proceeds thereof applied *pro rata* upon debts due plaintiff from Stayton Company and Stayton individually, and that the deficiency remaining unpaid upon the debt of the Stayton Company, if any, be established as a general claim against the assets in the hands of respondent Bunting, as receiver, and paid *pro rata* by him as a general claim; and other and further just relief.

There was no allegation in the complaint that the deed set up as a mortgage in fact had ever been recorded in Pierce county.

The answer of respondents, after certain denials, alleged affirmatively that, on October 17, 1919, Stayton individually was indebted to the bank in a considerable sum of money, and the bank held as collateral security certain deeds covering property described in the complaint; that, at the instance of the bank, Stayton organized the Stayton Company, under the laws of this state; that the bank conveyed to Stayton the real property described in the complaint, and Stayton conveyed the same property to the Stayton Company; that an arrangement was made through the bank whereby a certain concern known as the Oscar P. Dix Company,

of Seattle, Washington, undertook to buy and pay for certain bonds to be issued, and which were issued, by the Stayton Company in an amount sufficient to pay the debts of the company and the debts owed by Stayton individually, and also in an amount sufficient to pay certain sums of money, agregating approximately $3,000, then loaned by the bank to the Stayton Company. The bonds were to be secured by a mortgage upon all the property of the company, inclusive of the real property described in the complaint.

That, as a part of the same transaction, the Stayton Company executed the quitclaim deed referred to in the complaint, and placed the deed in escrow in the bank under an agreement whereby the deed was not to be delivered and not to be recorded except in the event that the Dix Company failed in its undertaking to sell the bonds of the Stayton Company and pay the proceeds thereof to the bank, in accordance with the terms of the agreement whereby the bank was to pay all its claims out of the proceeds of the sale of the bonds; that, pursuant to that agreement, the bonds and mortgage referred to were issued, and the bonds placed in escrow with the bank, but the Dix Company wholly failed to buy or pay for the bonds, or any of them; that the purpose and intent of the agreement entered into between Stayton individually and the Stayton Company and the bank was that the deed should not be delivered to the bank and should not be recorded in the office of the county auditor unless the undertaking of the Dix Company failed, and one of the reasons for making the agreement was that the knowledge of the existence of such quitclaim deed would prevent the Stayton Company from securing credit, and would also prevent it from selling its bonds; that thereafter the Stayton Company proceeded to operate its plant and manufacture concrete and cement products in the

ordinary course of business, and thereby and therein incurring subsequent indebtedness approximating ten thousand dollars, which indebtedness is unpaid; that credit was extended to the Stayton Company by various persons and concerns upon the faith of the record ownership of the real property which constituted the principal asset of the Stayton Company; that credit would not have been extended to the Stayton Company had the deed described in the complaint been delivered to the bank and recorded in the office of the auditor of Pierce county; that respondent Bunting, as receiver, pursuant to directions of the court, has called for the claims of creditors to be filed with him as receiver, and various claims have been filed approximating ten thousand dollars, nearly all of which were incurred subsequent to the time of the execution of the deed referred to; that such claims cannot be paid if appellant's claims against the real estate set out in the complaint are held to be valid; that such deed has never been delivered except in escrow and has never been recorded; that almost all of the creditors of the Stayton Company never knew of the existence of such deed, and relied upon the Stayton Company owning the property covered thereby as a basis for the credit extended to the Stayton Company by the creditors; that, by reason of such facts, the bank and the plaintiff as successor in interest of the bank, are estopped from relying upon the deed sued upon.

There was no denial by reply on the part of appellant of the foregoing affirmative allegations on the part of respondents; but at the trial it was stipulated that the affirmative answer might be considered to be replied to to the extent that it would permit appellant to introduce certain other instruments, including certain deeds and bills of sale from Stayton individually to the bank.

The history of the Stayton transactions with the Scandinavian-American Bank of Tacoma, and with Oscar P. Dix Company of Seattle, and the contract entered into between the bank and the Stayton Company and Stayton individually, covering the bond issue referred to in the affirmative answer of respondents, which is quite lengthy, are all set out in *Penn Mutual Life Ins. Co. v. Duke,* 123 Wash. 453, 212 Pac. 557, and for the sake of brevity will not be repeated here.

In October, 1919, there was due the bank from Mr. Stayton by way of principal and interest on notes and premiums on insurance $33,247.46. As security therefor he and his wife had conveyed the real estate on which his plant was located to the bank.

The lower court entered judgment to the effect that appellant is not entitled to the relief prayed for in the complaint, but is entitled to share equally with the other creditors of the L. Y. Stayton Company to the extent of its advances to the L. Y. Stayton Company, and adjudged and decreed that the claim of $3,000 with interest thereon at seven per cent per annum from October 21, 1919, be allowed as a general claim against the L. Y. Stayton Company in the receivership pending in the lower court, and that appellant is entitled to share on that claim equally and ratably with other creditors of the L. Y. Stayton Company; that this appellant take nothing upon the deed set out and referred to in the complaint, and the deed be adjudged to be no charge against the property described in such deed.

Appellant assigns as error the judgment of the lower court refusing to decree foreclosure of the deed as a mortgage, and the refusal of the court to establish its whole claim, amounting to a balance, after applying proceeds of life insurance policies, of $18,221.60 and interest, against the Stayton Company.

The bank, having been compelled to charge off much of its indebtedness against the Stayton Company, and Stayton individually, the stockholders of the bank employed one Allen to attempt to realize upon the assets. Stayton had failed to put through the bond issue, and had agreed with Allen to pay him $1,000 if Allen could put the deal through. This resulted in a written contract, dated October 15, 1919, between the Dix Company of Seattle and the Stayton Company, whereby the Stayton Company agreed to issue bonds in the sum of $100,000, secured by a deed of trust covering the plant, patents, manufacturing machinery, manufactured product, and all of Stayton's business property, and the Dix Company agreed to purchase $60,000 par value of these bonds at 85, and to pay for the same in thirty, sixty and ninety days after the execution of the bonds. On October 18, 1919, Allen, on behalf of Stayton and the Stayton Company, delivered to the bank the following written offer:

"In connection with the L. Y. Stayton account, I am submitting for your consideration the following papers relating to a proposed bond issue by the L. Y. Stayton Company, from the proceeds of which it is intended to pay the bank $25,000 for a receipt in full for the L. Y. Stayton paper, as per an agreement entered into between the bank and Mr. Stayton."

Then follows a list of papers and documents submitted by Allen for the Stayton Company, among others being a resolution of the board of trustees of the Stayton Company authorizing the issuance of the bonds bearing interest at 7 per cent; a resolution of the trustees authorizing the payment from the proceeds of these bonds of all the obligations of the Stayton Company necessary to be paid to clear up the title to the property proposed to be bonded; a contract and agreement with the Oscar P. Dix Company of Seattle to

buy and pay for $60,000 of the bond issue at 85 per
cent, which contract is assigned to the bank; a deed to
be executed by the bank to L. Y. Stayton Company
covering real estate at 50th and Pacific; a deed by L. Y.
Stayton and wife to L. Y. Stayton Company of real
estate at 50th and Pacific; a deed by Stayton and wife
to the L. Y. Stayton Company of lots 7 to 18, inclusive,
block 12, Hosmer's Addition to Tacoma; a bill of sale
to be executed to the bank by L. Y. Stayton covering
stock of concrete pipes at the plant at 50th and Pacific;
release by Gardner of a chattel mortgage to Stayton
covering machinery at plant at 50th and Pacific; a bill
of sale by L. Y. Stayton to the L. Y. Stayton Company
of all pipe stock, material, machinery and all personal
property whatsoever held by Stayton and relating to
the cement pipe plant, offices or business; tax state-
ments, assessments, bills, etc., showing amounts neces-
sary to clear the title to all property hereinbefore
enumerated, with summary showing total of $2,584.97,
not including abstract or attorney's fee; bill of sale by
L. Y. Stayton Company conveying back to the bank
the stock of pipe now owned by the bank; deed by the
L. Y. Stayton Company to the bank covering the real
estate at 50th and Pacific, and lots 7 to 18, inclusive,
block 12, Hosmer's addition, as restoration of security
and additional security for money advanced to clear
title in case the bonds shall not be paid for by Dix
Company as per agreement; a note to be given to the
bank by the L. Y. Stayton Company, indorsed by L. Y.
Stayton, for $3,000, to cover advances for taxes and
other expenses in perfecting title, issuing bonds, pro-
curing abstracts, etc., as much as is necessary to be
used for this purpose to be checked out by Allen. The
entire bond issue of $100,000 to be deposited with the
bank and issued to Oscar P. Dix Company in lots as
sold and paid for.

The deed mentioned to be given by the L. Y. Stayton Company to the bank covering real estate at 50th and Pacific, and lots 7 to 18, inclusive, block 12, Hosmer's Addition, "as restoration of security and additional security," is the deed referred to in the complaint and sought to be foreclosed as a mortgage. All these instruments were executed and delivered by Stayton and the Stayton Company, but the Oscar P. Dix Company failed to comply with its agreement to buy the bonds, and the indebtedness of Stayton and the Stayton Company was therefore never paid and satisfied. The deed which the bank received from the Stayton Company covered its principal property, and was placed physically in possession of the bank. The bonds signed by the Stayton Company were also placed physically in possession of the bank. It is clear from the conditions stated in the paragraph concerning the deed by Stayton Company to the bank that it was as restoration of security and additional security for money advanced to clear title, *in case bonds shall not be paid for by the Dix Company as per agreement.* That being the case, the clear inference is that the deed was not to be recorded, but the Stayton Company was left in possession of the real estate and of the personal property located thereon, which was all covered by the bond issue and the deed of trust executed to the Dix Company.

Appellant insists that this transaction was not intended to be fraudulent, and therefore cannot be held to be fraudulent in law even as to subsequent creditors.

We may concede that there was no agreement or conspiracy in the beginning that this deed was to be withheld from record so as to deceive subsequent creditors and induce them to lend credit to a concern which afterwards became bankrupt, but as was said in *Blennerhassett v. Sherman,* 105 U. S. 100:

"As long ago as the case of *Hungerford v. Earle,* (2 Vern. 261), it was held that 'a deed not at first fraudulent may afterwards become so by being concealed or not pursued, by which means creditors are drawn in to lend their money.' This doctrine has been repeatedly reaffirmed."

This principle was also long ago announced in the case of *Coates v. Gerlach,* 44 Pa. St. 43, and has been followed in *Lehman, Durr & Co. v. Van Winkle,* 92 Ala. 443, 8 South. 870; *Curtis v. Lewis,* 74 Conn. 367, 50 Atl. 878; *Kickbusch v. Corwith,* 108 Wis. 634, 85 N. W. 148; *Bunch v. Schaer,* 66 Ark. 98, 48 S. W. 1071; *State Sav. Bank of St. Joseph v. Buck,* 123 Mo. 141, 27 S. W. 341.

The Federal courts support this rule with apparently perfect unanimity. *Clayton v. Exchange Bank,* 121 Fed. 630; *Manders v. Wilson,* 235 Fed. 878; *Peterson v. Mettler,* 198 Fed. 938; *Post v. Berry,* 175 Fed. 564; *In re National Boat & Engine Co.,* 216 Fed. 208; *Davis v. Cassels,* 220 Fed. 958; same, 240 Fed. 1022 (C. C. A. affirming), and a number of others which could be cited.

The receiver represents the creditors as well as the corporation. *Washington Mill Co. v. Sprague Lumber Co.,* 19 Wash. 165, 52 Pac. 1067.

Appellants contend, also, that none of the subsequent creditors gave credit in reliance upon the real property, nor was any creditor deceived or misled by the fact that the deed in question was not recorded, since the former deed to secure $30,000 or more has been recorded, was released under the terms of the Dix agreement, the new deed taken, and these creditors cannot claim that they were misled into believing that there was no lien against the title to this property.

Of course, the intent of the bank was to protect itself; but it knew that the manufacturing business of

the Stayton Company could not proceed and the bonds could not be sold, and the bank therefore could not be paid, unless the company could get credit. It therefore withheld its mortgage from record, thus concealing it from the world, and the record shows that the business proceeded for several years, during which these subsequent creditors extended credit to the extent of something less than ten thousand dollars. This they did while the debtor was in possession and apparently the owner of the entire title to all the property. The bank had conveyed the title to the property to Stayton, Stayton had conveyed it to the company, and the company executed bonds secured by a mortgage, placing the bonds in the physical possession of the bank to be paid out in accordance with the agreement. As the record shows, when an attempt was made to foreclose upon the Dix bonds, it was shown that they had never been delivered, and foreclosure was refused.

The affirmative allegations of respondents' answer, which were not denied, are:

"Credit was extended to the L. Y. Stayton Company by various persons and concerns upon the faith of the record ownership of the real property described above, which real property constituted the principal asset of the L. Y. Stayton Company. . . . Credit would not have been extended . . . had the said deed been delivered to the Scandinavian-American Bank and recorded in the office of the auditor of Pierce County. . . . Defendant Bunting (the Receiver) has . . . called for the claims of creditors to be filed with him as receiver, and various claims have been filed approximating ten thousand dollars, nearly all or all of which . . . . were incurred subsequent to the time of the execution of said deed. Said claims cannot be paid if the plaintiff's claims against the real estate set out in the complaint are held to be valid."

The debts read into the record by stipulation were incurred by the Stayton Company at the times stated and all of them were subsequent to the execution of the unrecorded deed, and without knowledge that there was such a deed. It was also admitted that these subsequent creditors did not know of the unrecorded deed. Consequently, it must be manifest that the subsequent creditors, advancing money under the circumstances shown above, did so upon the faith of the ownership of the property being in the debtor. They had every reason to be induced to so believe.

Appellant also asserts that, since none of these creditors knew anything about the record title to this property, or if they did know the actual state of the record, they thought the property was incumbered for $100,000, they are not damaged by reason of the fact that it was incumbered for only $30,000.

This postulate seems to be based upon the fact that, since $100,000 is more than $30,000, the creditors were better off than they would be if the bonds had been actually outstanding.

The creditors had notice of the new mortgage to secure the bonds; but this action is not based upon that mortgage. They had no notice of the deed here involved, because it was concealed by the bank, and it seems that recovery thereon should depend upon its own strength and validity as against subsequent creditors. It ought not to be permitted to take advantage of its own concealment to the detriment of those misled into aiding the business by extending credit. While the bank may have intended no wrong, its intentional withholding of the deed was in law a fraud as to such subsequent creditors.

It seems to us, upon the clearest principles of equity, that the bank, by its intentional act in withholding knowledge of the deed it relied upon as security, is

estopped from asserting its prior right over the claims of subsequent creditors, and should obtain no preference over them as a secured creditor. Obviously the liquidator, as successor of the bank, is in no better position than the bank would be.

The last contention of appellants is that, in any event, the claim of the bank should be established for the full amount due from Stayton individually and from the corporation.

There is nothing in the pleadings or in the record to show that the Stayton Company had at any time assumed Stayton's individual indebtedness. The court below sustained the claim of the bank as a general creditor in the sum of $3,000, being the amount which the bank loaned the Stayton Company. We do not believe any further relief should be awarded.

Upon these considerations, we conclude that the judgment of the trial court was right.

Affirmed.

MAIN, C. J., PARKER, BRIDGES, MITCHELL, and PEMBERTON, JJ., concur.

TOLMAN, J. (dissenting)—I cannot concur in the reasoning of or the results reached by the majority. In my judgment, there was no concealment whatever, and therefore the authorities cited by the majority have no application. The transaction was a clean, straightforward, and reasonable business arrangement by which the bank released its mortgage security of record for the purpose of making the trust deed, securing the bond issue, a first lien on the mortgaged property. At the same time, as a part of the same transaction, and embodied in the same written instrument, it was provided that the bank should be restored to its security if for any reason the bonds were not sold and the money therefrom not re-

ceived. The deed intended as a mortgage, now in issue, was executed and delivered in pursuance to that agreement. That mortgage (deed) could not then have been recorded without defeating the whole purpose in mind. It must necessarily remain off the record until the trust deed was executed and recorded, and there was no reason to record it at least until it was known that the bond issue had failed. The agreement was in the possession of the bank, together with the bonds, and it must be held that anyone dealing, or contemplating dealing, with the L. Y. Stayton Company, having constructive notice that all of its property was pledged to secure an indebtedness of $100,000, would be bound to make inquiry as to whether the bonds had been issued and sold. Such inquiry would not and could not be complete without inquiring of the bank, which was the trustee under the trust deed, and since fraud is never presumed, the only presumption which can be indulged is that the bank's officials would have acted honestly and fairly with all inquirers and would have informed them of the whole arrangement so that they would have known that the property of the L. Y. Stayton Company, instead of being subject to a mortgage of $100,000, was actually subject to a mortgage of but some $30,000. In other words, the record informed would-be grantors of credit to the Stayton Company that its property was subject to a $100,000 mortgage; inquiry and the consequent revealing of what the majority thinks was concealed would have established the fact that the actual mortgage lien existing was less than one-third of that amount.

I therefore hold that, if those dealing with the Stayton Company chose to rely upon the record without inquiry, they cannot now complain because their debtor's property was incumbered for only one-third of the amount of which the record gave them notice. If they

had been diligent enough to inquire they would have learned the true facts and found that the bonds for $100,000 were not sold; that the trust deed was therefore unenforcible, and that, as a part of the arrangement by which the trust deed was placed of record, it was agreed that in any such event the prior and lesser mortgage should be restored.

In my opinion, no creditor of the Stayton Company has been wronged; the credit advanced has been in the face of constructive notice of a lien three times the size of that which appellant here seeks to enforce; no facts were concealed; reasonable diligence would have brought full information which would have been more favorable than the record revealed, and therefore the judgment appealed from should be reversed.

FULLERTON and MACKINTOSH, JJ., concur with TOL-MAN, J.