DEITRICK, RECEIVER, ET AL. v. STANDARD
SURETY & CASUALTY CO.

No. 455.   Argued March 7, 8, 1938.—Decided March 28, 1938.

*Messrs. George P. Barse* and *Robert E. Goodwin,* with whom *Messrs. Richard M. Nichols, James Louis Robertson,* and *Trevor V. Roberts* were on the brief, for petitioners.

*Messrs. Frederic H. Chase* and *Raymond P. Baldwin,* with whom *Mr. Frank H. Stewart* was on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The Boston-Continental National Bank, established in December 1930 through consolidation of Boston National Bank and Continental National Bank, became insolvent. December 17, 1931, a receiver appointed by the Comptroller of the Currency took charge of its affairs. Petitioner is his successor. Among the bank's effects were four "Note-Guaranty" Bonds—$40,000, $52,000, $20,000 and $20,000—alike in form, dated in August and December 1930 and June and July 1931, with certain "endorsements" showing extensions. Each purported to be executed by the maker of a described note as principal with Respondent as surety, and was conditioned to pay to the bank the amount of the note upon default, &c.

In June and September 1932 the Receiver brought separate actions at law upon three of these bonds. In each he alleged that the Company was indebted to him for the specified penalty with interest; and for this he asked judgment. The three declarations are alike in form and allegations. One, typical of all, is copied below.[1]

---

[1] Declaration—

Now comes the plaintiff in the above-entitled action and says that on December 22, 1931, he was appointed receiver of Boston-Continental National Bank by the Comptroller of the Currency of the United States, that he duly qualified and is now acting as such receiver.

And the plaintiff says that the defendant duly entered into, executed under seal and delivered to the Continental National Bank of

There also is one of the Note-Guaranty Bonds, typical of all.[2] Each declaration exhibited a bond, alleged that thereby the Company bound itself to pay the bank a

Boston, now known as Boston-Continental National Bank, a written instrument or bond, copy whereof is hereto annexed marked "A" and hereby made a part hereof; that by the terms of said bond the defendant bound itself to pay said Continental National Bank of Boston the sum of forty thousand dollars ($40,000) in the event that four notes of ten thousand dollars ($10,000) each signed by Westchester Discount Corporation were not paid upon the due dates as set forth in said bond, the last due date being April 20, 1931; that some time prior to April 20, 1931, said bond was extended to June 20, 1931, by a written instrument called endorsement, copy whereof is hereto annexed marked "B"; that some time prior to June 20, 1931 said bond was extended to December 20, 1931 by a written instrument called endorsement, copy whereof is hereto annexed marked "C"; that the condition of said bond as extended as aforesaid has been broken in that Westchester Discount Corporation, the principal named therein, has not paid the notes described in said bond according to their terms, but on the contrary has failed, refused and declined to pay said notes and still continues so to refuse, notwithstanding the fact that all times have elapsed and all conditions have been fulfilled necessary to entitle the plaintiff to payment in full of said notes; that the defendant was duly notified of the default in accordance with the provisions of the bond; that the damages sustained by the plaintiff on account of the default of said Westchester Discount Corporation are in excess of forty thousand dollars ($40,000).

. Wherefore, the defendant is indebted to the plaintiff in the penal sum of said bond with interest from December 20, 1931.

And the plaintiff says that this is an action at law arising under the Constitution and laws of the United States and is a case for winding up the affairs of said Boston-Continental National Bank; and the District Court of the United States for the District of Massachusetts has original jurisdiction under Section 24 of the Judicial Code of the United States.

(Signed)   By his Attorneys, ——— ———,

——— ———.

[2] Copy of Bond—
No.   .                                                              $40,000.00
Know all Men by these Presents, That we, Westchester Discount Corporation of Mount Vernon, New York, as Principal, and

specified sum in the event of default, which had occurred, &c., that damages had been sustained whereby the surety had become indebted "in the penal sum of said bond, with interest."

the Standard Surety & Casualty Company of New York, a corporation organized and existing under the laws of the State of New York and having an usual place of business in Boston, as Surety, are held and firmly bound and obliged unto the Continental National Bank of Boston, a banking corporation duly organized under the laws of the Commonwealth of Massachusetts and having an usual place of business in Boston in the County of Suffolk, in the full and just sum of forty thousand dollars ($40,000.), to be paid to said Continental National Bank of Boston as hereinafter provided to which payment we bind ourselves, our heirs, executors, administrators firmly by these presents.

The condition of this obligation is such that if the said Westchester Discount Corporation shall upon the due dates as hereinafter indicated make to the Continental National Bank of Boston full and true payment of a schedule of four notes as listed below then this obligation shall be void, otherwise shall remain in full force and effect.

Schedule of Notes.

| Date | Amount | Maturity |
|------|--------|----------|
| Dec. 20, 1930 | $10,000.00 | January 20, 1931 |
| Dec. 20, 1930 | 10,000.00 | February 20, 1931 |
| Dec. 20, 1930 | 10,000.00 | March 20, 1931 |
| Dec. 20, 1930 | 10,000.00 | April 20, 1931 |

In the event of default on the part of the principal on any note, the obligee shall notify the Home Office of the Surety Company at 80 John Street, New York City, New York, within ten (10) days by registered mail, of such default, and the Surety Company shall pay any liability hereunder, not exceeding the amount still unpaid on any or all of the aforesaid notes and in no event exceeding forty thousand dollars ($40,000.), said payment to be made by the Surety within thirty days after maturity of the final note.

Witness our hands and seals, and dated this 20th day of December, A. D. 1930.

WESTCHESTER DISCOUNT CORPORATION [SEAL],
By JOSEPH STONE, *Treas.*
STANDARD SURETY & CASUALTY COMPANY
OF NEW YORK,
By PERCY G. CLIFF, *Attorney-in-fact.*

Answering, the Company denied liability and alleged that, as the bank well knew, the bond was executed without authority, had been fraudulently obtained, was invalid.

Before the three law actions were filed the Surety Company instituted four separate equitable proceedings in the Supreme Court, Suffolk County, Massachusetts, against the bank and makers of guaranteed notes. Each complaint alleged that the bank had fraudulently obtained the bond and asked that it be declared null and void. Later the Receiver became party in these causes and all were removed to the federal court. There, he filed separate answers, substantially alike, averring that the bond had been duly executed, that default had taken place and that damages amounting to the full amount of the specified penalty had been sustained. Each answer concluded—"Wherefore these defendants pray: 1. That the court determine the amount due from the plaintiff to Boston-Continental Bank and John B. Cunningham, its receiver, and order the plaintiff to pay the same with interest. 2. For such further relief as the court finds meet and just."

Copies of one complaint [3] and answer [4] thereto, typical of all, are in the margin.

---

[3] Bill of Complaint—

1. The plaintiff is a corporation legally established and existing under the laws of the State of New York, having a usual place of business in Boston in the County of Suffolk in this Commonwealth.

2. The defendant Boston-Continental National Bank formerly called Continental National Bank of Boston, is a national banking association, legally established and existing under the laws of the United States of America, having its usual place of business in said Boston. The defendant Westchester Discount Corporation is a corporation established and existing under the laws of the State of New York having its usual place of business in Mount Vernon in the County of Westchester and State of New York.

3. The plaintiff is informed and believes and therefore avers that on or about December 20th, A. D. 1930 the defendant Westchester

A jury was waived in the law actions and the seven causes went to an Auditor and Master with instructions

Discount Corporation and one Percy G. Cliff executed an instrument a copy of which is hereto annexed marked A and made a part hereof, and at the same time the defendant bank executed and delivered to said Cliff an instrument entitled "Release" a copy of which is hereto annexed Marked B and made a part hereof.

Thereafter, so the plaintiff is informed and believes and therefore avers, the said Cliff executed the instruments entitled "Endorsements" copies of which marked respectively C. and D. are hereto annexed and made parts hereof.

4. The plaintiff is informed and believes and therefore avers that all of the instruments aforesaid marked A. C. and D. were executed by said Cliff at the request and solicitation of the defendants without any consideration or security, without premium charged or paid or intended to be charged or paid therefor, upon the understanding between the defendants and said Cliff that said instruments were not binding obligations of the plaintiff, and upon the assurance and promise given by the defendants to said Cliff and upon the understanding that said instruments would not be used or enforced by said bank against the plaintiff, that the plaintiff should never be informed of the existence thereof, and that after remaining in the custody of the defendant bank for a short time they should be returned to said Cliff.

5. All of the instruments above described copies of which are hereto annexed marked A. C. and D. were executed by the said Cliff without authority from the plaintiff and without its knowledge or consent, as both defendants well knew. The plaintiff has only recently learned of the existence of said instruments which are now in the possession of the defendant bank.

Wherefore the plaintiff prays:

1. That the defendants be enjoined from enforcing or attempting to enforce the said instruments marked A. C. and D. or any of them by suit or otherwise.

2. That the said instruments marked A. C. and D. be declared null and void and that the defendant bank be ordered to deliver them up to be cancelled.

3. For such other and further relief as may be necessary and proper.

(Signed)　By its Attorneys, ———— ————,

———— ————.

to report findings of fact and conclusions of law, the former to be final. After taking much evidence he reported with

⁴ ANSWER OF BOSTON-CONTINENTAL NATIONAL BANK AND JOHN B. CUNNINGHAM, RECEIVER OF BOSTON-CONTINENTAL NATIONAL BANK.

Now come Boston Continental National Bank and John B. Cunningham, receiver of Boston-Continental National Bank, and for answer to the plaintiff's bill of complaint say as follows:

1. They admit the allegations contained in the first paragraph of the bill of complaint.

2. They admit the allegations contained in the second paragraph of the bill of complaint.

3. As to the allegations contained in the third paragraph of the bill of complaint, they say that the instrument, a copy whereof is attached to the bill of complaint marked "A", was duly executed by Westchester Discount Corporation by Joseph Stone, its treasurer, and was duly executed by the plaintiff, by Percy G. Cliff, its attorney-in-fact, and that an attested copy of said Cliff's general power of attorney was attached to the original instrument; that thereafter the plaintiff duly executed the instruments entitled "Endorsements" by said Cliff, its attorney-in-fact, copies of which endorsements are attached to the bill of complaint marked "C" and "D"; that if a purported release was delivered to said Cliff by Continental National Bank by Terrell M. Ragan in the form attached to the bill of complaint marked "B", such purported · release was delivered without authority of the board of directors of said Continental National Bank, was executed without consideration and is voidable and void. Except as aforesaid, they deny the allegations contained in said paragraph 3 of the bill of complaint.

4. They deny the allegations contained in the fourth paragraph of the bill of complaint.

5. They deny the allegations contained in the fifth paragraph of the bill of complaint.

6. Further answering they say that the condition of said instrument, copy of which is attached to the bill of complaint marked "A" as extended by instruments, copies of which are attached to the bill of complaint marked "C" and "D", has been broken in that Westchester Discount Corporation, the principal named in said instrument, has not paid the notes described therein according to their terms, but on the contrary has failed, refused and declined to pay said notes and still continues so to refuse, notwithstanding the fact

478

a finding of facts showing clearly that the bank obtained the bonds through the fraud of its president, Ragan, and Cliff, general agent of the Company. Among other things he said: "I rule that the bonds and 'endorsements' in suit were not binding obligations in the hands of the bank as a going concern, for the reason that Ragan's knowledge of their infirmities is imputed to the bank; and that the bonds and 'endorsements' would not be binding obligations in the hands of the receiver, if his rights were derived solely from the bank as distinguished from its creditors." He further ruled that as Cliff, general agent of the Surety Company, knew the bonds would be shown to the bank directors and to any others entitled to inquire concerning the notes described therein for the purpose of deception, therefore "the bonds and 'endorsements' in suit are binding obligations in the hands of the receiver due to the fact that he represents the bank's creditors."

The District Court heard the causes on report and exceptions. It held the bonds void and further "adjudged and decreed that the counterclaim of the defendant receiver, set forth in his answer, be and the same is hereby dismissed."

that all times have elapsed and all conditions have been fulfilled necessary to entitle Boston-Continental National Bank and John B. Cunningham, receiver of said bank, the successors to the obligee described therein, to payment in full of said notes; that the plaintiff was duly notified of the default in accordance with the provisions of the said instrument; that the damages sustained by these defendants on account of the default of said Westchester Discount Corporation are in excess of $40,000.

Wherefore these defendants pray:

1. That the court determine the amount due from the plaintiff to Boston-Continental National Bank and John B. Cunningham, its receiver, and order the plaintiff to pay the same with interest.

2. For such further relief as the court finds meet and just.

(Signed)   By their Attorneys, ———— ————,

———— ————.

By stipulation the causes were joined for appeal upon a single record. The Circuit Court of Appeals affirmed the District Court and said: "The master and auditor held that the receiver in bringing these actions did not derive his right of recovery through the Bank, but because one or more creditors of the Bank were deceived, and as he represents creditors he derived his right of action through them. The receiver, however, makes no such allegations in his declaration." "It is clear from the pleadings that the receiver seeks to recover on these bonds as assets of the Bank. In such an action he stands no better than the Bank itself. All defenses open against the Bank in such a case are open against the receiver, and he is chargeable with knowledge of all facts known to the bank affecting the character of the claim." "If therefore, the contract with the Surety Company was illegal as to the Bank, because, as the master and auditor found, the Bank was charged with the knowledge of its president, a recovery based on the contract of surety cannot be had by the receiver, since a recovery must be based on the pleadings, and the allegations of liability in the plaintiff's declarations are based solely on the contract of surety." In respect of the Receiver's counterclaim set up in the equity suits it said: "The plaintiff's counterclaim distinctly raises the question of the validity of the bonds. The issue of trust for the benefit of creditors is not raised or suggested." "The obligations of the Surety Company based on the depositors of the bank being injured by the giving of the bonds, and the receiver's claim against the Surety Company based on a trust relationship are not mentioned, and, we think, are not raised by the plaintiff's counterclaim in the equity suits."

We agree with the conclusion reached by the Circuit Court of Appeals. Its judgment must be affirmed.

Counsel for the Petitioner here submit—"The Receiver's position rests primarily upon the proposition that the

circumstances surrounding the giving of the note-guaranty bonds by Cliff to the Bank accompanied by the supporting powers of attorney, . . . and the consequences which followed the credence given to said bonds and powers of attorney by the national bank examiners and the Comptroller, acting as the representatives of the depositors and other creditors, give rise, in a suit by the Receiver to enforce the bonds, to an *estoppel* which precludes the Surety Company from denying the validity of the bonds and from asserting as a defense that its agent acted fraudulently and without authority in executing the bonds and that a fraudulent official of the Bank knew of the agent's misconduct."

An examination of the pleadings makes it quite clear that the Receiver undertook to set up rights acquired by the insolvent bank through duly executed contracts between it and the Surety Company. He makes no suggestion of a purpose attributable to the company to mislead creditors or others; makes no allegations of damage except that sustained by the bank. He sets up no facts which would render unconscionable a denial of liability upon the bond because of the agent's fraud obviously induced by the president of the bank. In this state of the pleadings the Receiver may not have judgment; he cannot rely on something not complained of, nor can he have damages because of supposed deceptions which the pleadings fail to suggest.

In *Rankin* v. *City National Bank,* 208 U. S. 541, 545, 546, a suit by the receiver of the Capitol National Bank of Guthrie to recover the amount of an alleged deposit where it appeared "that the whole business, from beginning to end, was and was intended to be a mere juggle with books and papers to deceive the bank examiner," this Court denied the receiver's claim and said: "If the Guthrie Bank had sued while it was a going concern it could not have recovered, and the receiver stands no bet-

ter than the bank." We adhere to the doctrine there approved and regard it as decisive of the present cause.

*Affirmed.*

MR. JUSTICE CARDOZO took no part in the consideration or decision of this case.

MR. JUSTICE BLACK, dissenting.

When two or more persons have jointly perpetrated a fraud with intent to injure others, justice and law combine to entitle injured parties to recover from any or all of the conspirators. Corporations can act only through agents. When, as here, two corporations, acting through authorized agents, have jointly perpetrated a fraud which was intended to—and did—injure others, a just rule of law should likewise hold both corporations jointly and severally responsible for the damages inflicted by them upon innocent parties.

In this case innocent depositors and other creditors of a now insolvent national bank suffered damages as a direct result of fraud wilfully perpetrated on them by joint action of the bank and the respondent surety corporation, acting through their agents. Because of the guilty participation of the bank president in this fraud, the opinion just read denies the receiver of the insolvent bank a recovery which would inure to the benefit of the innocent depositors. At the same time, however, the respondent surety corporation is freed from any responsibility to these innocent parties, in spite of the admitted guilty participation of its agent. That the agent of the respondent surety corporation was authorized to write the indemnity bonds used in the fraud is disclosed by the findings of the master and auditor—acting "under a stipulation that findings of fact shall be final." These findings show that:

The duly licensed agent of the surety company (respondent) conspired with the president of the bank to

supply indemnity bonds guaranteeing the payment of certain notes held by the bank, which bonds were to be placed among the assets of the bank for the purpose of deceiving federal bank examiners, the bank's directors and all others entitled to inquire as to the soundness of the notes; the surety company's agent also personally assured the examiners that the bonds were all right; no premium was paid the surety company and the bonds were intended by the respondent's duly authorized agent and the president of the bank to be valueless and used as "window dressings" to accomplish deceptions; respondent's duly licensed agent had a power of attorney "to make, execute and deliver . . . for and on its behalf as surety, any and all bonds . . . undertakings, or anything in the nature of any of them, . . . to all intents and purposes as if same had been duly executed and acknowledged by the regularly elected officers of the company . . . "; a copy of the power of attorney was attached to the bonds and the examiners inspected public records and verified the authenticity of this power of attorney; these bonds were executed after the examiners had notified the bank to make good an impairment of capital and the execution of these bonds caused the comptroller to withdraw his order to make good the impairment and as a result the bank continued to remain open, assumed additional obligations, and accepted further deposits in large amounts.

Since the receiver represents the creditors as well as the bank [1] he can sue in his own name to recover assets

[1] *Case* v. *Terrell*, 11 Wall. 199, 202; High, "On Receivers," 4th ed., §§ 314, 320; *In re Pleasant Hill Lumber Co.*, 126 La. 743, 757; 52 So. 1010; *Duke* v. *Stayton Co.*, 132 Wash. 69, 77; 231 Pac. 171; *Atlantic Trust Co.* v. *Dana*, 128 Fed. 209, 221; *De Stafano* v. *Almond Co.*, 107 N. J. Eq. 156, 159; 152 Atl. 2; *Industrial Mut. Dep. Co.'s Receiver* v. *Taylor*, 118 Ky. 851, 854; 82 S. W. 574; *Iglehart* v. *Todd*, 203 Ind. 427, 440; 178 N. E. 685.

on behalf of the bank or its creditors.[2] "It is the duty of the receiver of an insolvent corporation to take steps to set aside transactions which fraudulently or illegally reduce the assets available for the general creditors, even though the corporation itself was not in a position to do so." *Texas & Pacific Ry. Co.* v. *Pottorff,* 291 U. S. 245, 261. There is no occasion to consider whether the bank could recover against the insurance company on the indemnity bonds. "Enough that the receiver has the requisite capacity." *McCandless* v. *Furlaud,* 296 U. S. 140, 160. In the *McCandless* case (page 171), the minority view was that "the receiver's rights could rise no higher" than the corporation's rights. The majority rejected this viewpoint (page 159), holding that where corporate officers and shareholders combined with others to despoil a corporation, recovery could be had "either by the creditors directly or in their behalf by a receiver."

The receiver does not merely represent the corporation—the bank. The object of the appointment of a receiver is to collect and protect all of the insolvent's assets in the interest of the creditors first, then for the benefit of the stockholders. It has long been recognized that even in the case of a going bank the rights of depositors and the public would be jeopardized unless given protection in addition to that afforded by the bank's officers elected by the stockholders. For that reason, among others, the Government has provided a system of examination for all national banks.[3] Statutes require banks to make reports to the Comptroller of the Currency and to permit examinations by federal bank examiners. These examinations are designed to prevent such frauds as were perpetrated in this case. This objective will be frustrated if surety companies—with complete immunity—can, through their authorized agents, conspire with bank offi-

---

[2] See, *Kennedy* v. *Gibson,* 8 Wall. 498, 506.

[3] See, *Easton* v. *Iowa,* 188 U. S. 220, 238.

cials to deceive and trick bank examiners. The convenient fiction that knowledge of an officer of the bank is imputed to the bank itself is not sufficient to relieve respondent surety company from the consequences of the wrong committed by its authorized agent. There is not even a fiction under which knowledge can be imputed to innocent depositors. Strange, indeed, it is if the elaborate system of precautions provided by the Government to protect the interests of creditors of national banks by examination and visitation of federal officials must be held for naught by application of the fiction that the bank—not the injured depositors—knew everything its president knew. The interests of the bank and the interests of the depositors and creditors are not always identical. That their interests are recognized as separate and distinguishable is amply shown by laws passed to protect depositors and creditors of national banks. Public solicitude for protection of depositors is exemplified by the recent passage of the law insuring public deposits.[4]

The receiver filed suits at law side to recover on the several indemnity bonds. The surety company proceeded in equity praying cancellation of the bonds. All actions were tried on evidence before a master and auditor "under a stipulation that findings of fact shall be final." These findings set forth all of the rights of the receiver as the representative of the creditors, the stockholders and the bank.

In this case, the principles involved are of great importance. The decree below adjudged the indemnity bonds to be void and unenforceable. Since I believe the receiver was entitled under these actions to enforce the bonds and to protect the innocent victims of fraud, I would reverse the decree below.

Mr. Justice Reed concurs in this opinion.

[4] 12 U. S. C. § 264 et seq.