## FEDERAL DEPOSIT INS. CORPORATION v. WOODS.

### No. 1112.

District Court, W. D. Kentucky.

Aug. 10, 1940.

Wilson W. Wyatt and Baldwin C. Burnam (of Peter, Heyburn, Marshall & Wyatt), both of Louisville, Ky., for plaintiff.

O. B. Bertram, of Campbellsville, Ky., J. H. Graham, of Greensburg, Ky., John L. Vest, of Walton, Ky., and James E. Fahey (of Woodward, Dawson & Hobson), of Louisville, ·Ky., for defendant.

SWINFORD, District Judge.

This is an action by the receiver of a national bank to recover on a promissory note found in the assets of the bank at the time it went into liquidation.

The Taylor National Bank of Campbellsville, Kentucky, was a banking institution of many years standing. At one time practically the entire stock of the bank had been owned by George H. Gowdy, the uncle of the defendant. At the time the bank went into receivership about 81% of the stock was owned by T. O. Morton, its executive president and cashier, and members of his immediate family. Mrs. Lois G. Woods had long been a customer of the bank.

T. O. Morton had been the president and cashier of the Taylor National Bank

for many years. Like many banks of this kind and in communities of this size, practically all of the affairs of the bank were left by the directors in the hands of the cashier and Morton as president and cashier dominated the board and ran the bank as a "one man bank".

When the bank closed, Morton was charged with violation of the national banking laws. Indictments were returned and after trial of some charges which resulted in verdicts of guilty, and pleas of guilty to others, Morton was sentenced to terms in federal prison. This fact is stated as it was due to the manipulations of Morton and his efforts to secure money for his personal use that the transactions disclosed by this record were had.

On or about the date of the note in suit the president of the bank, T. O. Morton, called at defendant's home and advised her that the bank needed some money and asked her to sign a note for $17,500 to be used by the bank in securing funds for the bank.

Mrs. Woods went to the bank on February 8, 1937, and signed the note as requested. She was assured that ample collateral would be placed with the note and that in no event would she be called upon to pay it or any part of it.

It is now disclosed that this note was a renewal of similar notes found in the desk or lockbox of T. O. Morton. In my judgment these notes were forgeries, and the money when originally taken was used by T. O. Morton for his personal benefit.

There is another very material fact. In 1934 when the bank examiners were at the bank a note in the sum of $12,000 was found with the assets of the bank with the name of Lois G. Woods signed to it. The bank examiner questioned the genuineness of this note. The note was a forgery.

Mrs. Woods was called at night to come to the bank. Her brother met her on the outside of the bank and told her of the forged note but asked her to tell the bank examiner that it was a genuine note. She entered the bank where she found the bank examiner and T. O. Morton and the following conversation occurred, as indicated from the testimony of Mrs. Woods.

"I was out one evening to a friend of mine's, and Mrs. Morton came over to this party and said they wanted me down at the bank, and when I go there my brother was on the outside of the bank and he said 'The bank inspectors are here and there is a note there in the bank with your name signed to it.' I don't know whether he said it was a $12,000 or $14,000 note; I don't remember the exact amount. 'Now', he said, 'When they ask you if that is your note you tell them it is. I haven't time to explain it to you,' and when I went in there were two or three of the bank inspectors and this—one of the men that had the note said, 'Mrs. Woods, is this your note?'. I didn't know what it was all about, but my brother had asked me to do that and I said, 'Yes, that is my note'."

This transaction occurred in June, 1934. Something over two years prior to signing by the defendant of the note herein sued on.

It is further in evidence that Mrs. Woods executed a writing to Granberry and Company, a New York brokerage firm, whereby she gave T. O. Morton authority to deal in stocks and bonds in her name. The date of this authorization was August 25, 1934. Mrs. Woods expressly denies signing this authorization. I am convinced that she did not sign it.

The Court is thus presented with the very difficult question of determining whether or not under this state of fact and an apparent conflict in the authorities there is liability on one who signs a promissory note for what is believed to be the accommodation of the bank, but what is in fact an assistance to an officer of the bank seeking to cover up defalcations.

It is contended by the defendant that the note is without consideration and there can be no recovery. The defendant relies on the case of Rankin v. City National Bank, 208 U.S. 541, 28 S.Ct. 346, 52 L.Ed. 610, and cases following the rule laid down therein. This line of cases includes Peterson v. Tillinghast, 6 Cir., 1911, 192 F. 287, 289; Deitrick v. Standard Surety & Casualty Co., 1 Cir., 1937, 90 F.2d 862; Yates Center Nat. Bank v. Lauber, D.C. Kan., 1915, 240 F. 237; Cutler v. Fry, D.C.Kan., 1915, 240 F. 238; Yates Center Nat. Bank v. Schaede, D.C.Kan., 1915, 240 F. 240.

The plaintiff asserts that the defendant is estopped to plead want of consideration and relies on the recent case of Deit-

rick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694.

The parties advance here all of the arguments that were urged in the case of Federal Deposit Insurance Corporation v. Pendleton, D.C., 29 F.Supp. 779, decided by this Court several months ago. The rulings on the various questions involved there that are common to the case at bar are expressly approved here.

The case at bar has one striking difference in that the money had already been taken from the bank at the time the note was executed while in the Pendleton case the money was taken simultaneously with the execution of the note. In other words, it was through Pendleton's act that the money was withdrawn. Here the defalcation by Morton had already been committed.

Undoubtedly the Rankin case from the Supreme Court and the case of Peterson v. Tillinghast, supra, from the Sixth Circuit, are strong authority for the position of the defendant here. But does the case of Deitrick v. Greaney, supra, destroy the Rankin case and that line of authorities? Mr. Justice Roberts, in a dissenting opinion concurred in by Mr. Justice McReynolds, says that it does.

After discussing the Rankin case and pointing out that it was followed in Deitrick v. Standard Surety & Casualty Co., 303 U.S. 471, 58 S.Ct. 696, 82 L.Ed. 962, decided May 28, 1938, and in commenting on this latter case the dissenting opinion says [309 U.S. 190, 60 S.Ct. 487, 84 L.Ed. 694]: "In view of what has been said, it is apparent that, under the guise of distinguishing the earlier case, the court in fact overrules it."

While I do not presume to say that Deitrick v. Greaney, supra, cannot be distinguished from Deitrick v. Standard Surety & Casualty Co., supra, a careful reading and re-reading of Deitrick v. Greaney convinces me that the Court wishes to confine in very narrow limits any exception to the rule that one lending his name to make a bank appear in better financial condition than it really is is liable.

In the Deitrick v. Standard Surety & Casualty Co. case the Court was divided. Mr. Cardozo did not sit in consideration of the case and two of the Justices dissented. In a dissenting opinion Mr. Justice Black stated [303 U.S. 471, 58 S.Ct. 702, 82 L.Ed. 962]: "The receiver does not

merely represent the corporation—the bank. The object of the appointment of a receiver is to collect and protect all of the insolvent's assets in the interest of the creditors first, then for the benefit of the stockholders. It has long been recognized that even in the case of a going bank the rights of depositors and the public would be jeopardized unless given protection in addition to that afforded by the bank's officers elected by the stockholders. For that reason, among others, the government has provided a system of examination for all national banks. Statutes require banks to make reports to the Comptroller of the Currency and to permit examinations by federal bank examiners. These examinations are designed to prevent such frauds as were perpetrated in this case. This objective will be frustrated if surety companies—with complete immunity—can, through their authorized agents, conspire with bank officials to deceive and trick bank examiners. The convenient fiction that knowledge of an officer of the bank is imputed to the bank itself is not sufficient to relieve respondent surety company from the consequences of the wrong committed by its authorized agent. There is not even a fiction under which knowledge can be imputed to innocent depositors. Strange, indeed, it is if the elaborate system of precautions provided by the government to protect the interests of creditors of national banks by examination and visitation of federal officials must be held for naught by application of the fiction that the bank—not the injured depositors—knew everything its president knew. The interests of the bank and the interests of the depositors and creditors are not always identical. That their interests are recognized as separate and distinguishable is amply shown by laws passed to protect depositors and creditors of national banks. Public solicitude for protection of depositors is exemplified by the recent passage of the law insuring public deposits."

It seems to me that the language in this dissenting opinion expresses the decided view of the Supreme Court as stated in the opinion in the Deitrick v. Greaney case. While the Rankin case is not overruled expressly the following quotation indicates that the Court does not wholeheartedly approve its former decision: "In a strict and technical sense an estoppel arises only when a misrepresentation has

prejudiced another who has relied upon it. For that reason courts have sometimes held that one in the position of respondent is not estopped to set up the agreement against the bank or the receiver either because it did not appear that the bank was deceived by the concealment and misrepresentation or because injury to creditors was not shown to have resulted from them, cf. Peterson v. Tillinghast, 6 Cir., 192 F. 287; Cutler v. Fry, D.C., 240 F. 238; First State Bank v. Morton, 146 Ky. 287, 293, 142 S.W. 694; Quincy Trust Co. v. Woodbury [299 Mass. 565], 13 N.E.2d 377; Agricultural Credit Corp. v. Scandia American Bank, 184 Minn. 68, 237 N.W. 823. But stated more precisely, the doctrine with which we are now concerned is not strictly that of estoppel as thus defined. It is a principle which derives its force from the circumstances that respondent's act, apart from its possible injurious consequences to creditors, is itself a violation of the statute; and that the statute, read in the light of its purposes and policy, precludes resort to the very acts which it condemns, as the means of thwarting those purposes by visiting on the receiver and creditors whom he represents the burden of the bank's unlawful purchase. Pauly v. O'Brien, C.C., 69 F. 460; Niblack v. Farley, 286 Ill. 536, 122 N.E. 160; Iglehart v. Todd, supra, 203 Ind. 427, 442, 178 N.E. 685; Cedar State Bank v. Olson, 116 Kan. 320, 323, 226 P. 995; Denny v. Fishter, supra [238 Ky. 127, 36 S.W.2d 864]; Parker v. Parker, 287 Mich. 49, 282 N.W. 897; German-American Finance Corp. v. Merchants' & Mfgs. State Bank, 177 Minn. 529, 225 N.W. 891, 64 A.L.R. 582; Vallely v. Devaney, 49 N.D. 1107, 194 N.W. 903; Bay Parkway Nat. Bank v. Shalom, supra [270 N.Y. 172, 200 N.E. 685]; Mount Vernon Trust Co. v. Bergoff, 272 N.Y. 192, 196, 5 N.E.2d 196; Putnam v. Chase, 106 Or. 440, 212 P. 365. See Schmid v. Haines, 115 N.J.L. 271, 178 A. 801; Williston on Contracts (Rev. ed.) § 1632; [7] Zollmann, Banks and Banking, § 4783."

It must, of course, be recognized that the opinion in Deitrick v. Greaney, supra, points out the fact that the National Bank Act expressly prohibits the purchase and retention of its own stock by a banking institution. R.S. § 5201, 12 U.S.C.A. § 83. That was the particular offense shown by the record in that case There the bank, in order to avoid the provision of the statute, transferred certain of its capital stock to a director in exchange for a promissory note with the express understanding that the stock was still the property of the bank and the collection of the note was not to be enforced.

The results, however, in that case and the case at bar are identical. That is to deceive the bank examiners. I believe it is the purpose of the law not to permit that and one who lends himself to it is liable.

Mrs. Woods must have known one of two things. Either that she was lending her name to assist the bank by deceiving the examiners or that she was assisting Morton to perpetrate a fraud on the bank. The transaction on its very face smacks of fraud. She knew that Morton was a forger according to her own testimony. She had assisted him to conceal a forgery by a prevarication on a previous occasion. The record is strangely silent of an explanation of what steps she took to report Morton to the board of directors after the experience with the forged note for $12,000 in 1934.

She denies having signed any paper involving any of these transactions except the note sued on. She claims to have been interested in the success of the bank because her uncle had once owned it and yet after knowing that Morton was a forger she continues to do business at the bank and signs her name to a note for a large sum of money for no reason at all except that Morton asked her to.

Her actions are so inconsistent with the normal reaction of a bank customer who found that the cashier was forging her name that it is with some difficulty the Court concludes that these prior notes and the authorization to Granberry and Company were all forgeries. It is not entirely inconsistent with reason to conclude that Mrs. Woods might have had some suspicion of what was going on and approved. The case at bar by reason of the actions of the defendant in assisting Morton in his deceptive and fraudulent practices on former occasions is a much stronger case for the plaintiff than Deitrick v. Greaney, supra. It is also distinguished from the case of Rankin v. National Bank, and Peterson v. Tillinghast. In those cases the action was undoubtedly for the ostensible benefit of the bank. Here Mrs. Woods was the willing tool of Morton, who she now says is a forger and whom

she says she knew to be a forger before she signed the note in question.

I am of the opinion that the plaintiff should recover on the note.

Proper findings of fact, conclusions of law and judgment should be submitted.