OPINION OF THE COURT
Gerard E. Delaney, J.
The issue before the court is whether a right of preemption on the sale of real property for a fixed price, termed as perpetual for the parties and their heirs, violates the rule against perpetuities (EPTL 9-1.1, subds [a], [b]), or constitutes a restraint on the alienation of the land. In the facts and circumstances of this case no such violations are found.
Plaintiff, Anna H. Izzo, and her late husband, Anthony, had resided at 85 Washburn Lane, Stony Point, New York, since approximately October 2, 1947. On October 25, 1967, the plaintiff and her husband entered into a contract with the defendant, Julia Brooks, for the sale and purchase of a parcel of real property which the Izzo’s owned, designated 79 Washburn Lane, which property was adjacent to 85 Washburn and had a building housing a grocery store erected upon it. The purchase price of 79 Washburn was $23,500.
As defendant wished to continue the operation of the grocery store at 79 Washburn, and certain portions of the *744 premises at 85 Washburn were needed to allow access for trucks supplying the grocery store, plaintiff, her husband and defendant, on the same day of sale of the 79 Washburn premises to the defendant, October 25, 1967, executed an agreement captioned “option to purchase”, the pertinent provisions of which are as follows:
“In consideration of the sum of $10.00 and other good and valuable considerations paid by [defendant plaintiff] hereby grants, bargains and sells to [defendant] her heirs, executors, administrators, successors and assigns, the exclusive option to purchase * * * 85 Washburn Lane * * * upon the following terms and conditions:
“1. This option and all the rights and privileges * * * shall be perpetual, until the notice hereinafter set forth is given.
“2. This option is to be exercised at such time as [plaintiff] desires to sell the subject premises, it being the obligation of [plaintiff to give written notice to defendant of her intent to sell and defendant then to have 60 days to exercise her option to purchase].
“3. The total purchase price shall not be more than $20,000.00 * * *
“6. [the option, etc., was made freely assignable.]
“7. This option shall be binding on the heirs, executors, administrators, successors and assigns of [plaintiff].” (Emphasis added.)
Such option agreement was recorded on November 7, 1967.
On or about December 24, 1973, Anthony Izzo wrote to defendant and stated in essence, that the plaintiffs had the 85 Washburn premises appraised and had “changed the price” to $27,000 net and then recited different mortgage terms than under the previous “option” agreement. Mr. Izzo asked defendant to consider the “offer” and required a “refusal after [sic] 60 days.”
On January 14, 1974, defendant’s attorney rejected such offer to change the terms of the “option” agreement and to the extent that Anthony Izzo’s letter might have been considered notice of his intention to sell the property, he stated that defendant would exercise her “option”. Defen *745 dont then personally advised plaintiffs of her intention by letter dated February 11, 1974.
Apparently no further steps were taken by the Izzos, since the next communication received by defendant was a September 30, 1977 letter from a local real estate agent who was “contemplating the sale” of the Izzo property and asked if defendant wished to exercise her option. Defendant’s attorney, by return letter dated October 4, 1977, advised the agent that defendant would exercise her option if the Izzos’ intended to sell.
Anthony Izzo died on December 1, 1979 and plaintiff instituted the instant action for declaratory judgment so as to void the option agreement and cancel the agreement as recorded on the grounds that: (1) the agreement is void as it violates that portion of the rule against perpetuities which prohibits the suspension of the power of alienation (EPTL 9-1.1, subd [a]), and (2) the agreement is void on the grounds that it violates that portion of the rule against perpetuities which prohibits remoteness of vesting (EPTL 9-1.1, subd [b]), and (3) a court of equity should not enforce the agreement due to the increased value of the property, i.e., that such agreement constituted an unenforceable “restraint” on the land.
In this instant application for summary judgment, based upon all grounds mentioned, plaintiff has produced her own affidavit, stating that while she considered the price of $20,000 to be adequate consideration in 1967, inasmuch as she is now aware that the property has greatly increased in value (to $33,500 as of December 1, 1979 according to the included affidavit of a local real estate agent), she “cannot conceive of any circumstances in which [she] would sell the property”.
Before the court, by necessity, enters the never-never-land of a rule and statute whose rationale and continued existence may well be an anomaly in this contemporary society (see Fetters, Perpetuities: The Wait-and-See Disaster — A Brief Reply to Professor Maudsley, with a few asides to Professors Leach, Simes, Wade, Dr. Morris, et al., 60 Cornell L Rev 380, 383-388), it must first determine what interest was or was not created by the parties or intended to be created by their agreement of October 25, *746 1967. Plaintiff claims what was attempted to be granted was a “pre-emptive right,” (Garcia v Callender, 125 NY 307), whereas defendant claims she received an “option” to purchase.
The parties, in their agreement, chose to term such rights, as granted, “the exclusive option to purchase” the premises at 85 Washburn Lane. In the classic sense “a first right option and privilege of purchasing is not an absolute option but merely an option conditional upon the owner’s willingness to sell, or a first refusal if he offers to sell” (3A Warren’s Weed, New York Law of Property, Options, § 3.02; cf. §§ 1.01, 6.02). By whatever name “it should be noted that the ‘first refusal’ option differs materially from the absolute option contract in that the optionee is there given a power to compel the owner of property to sell it at a stipulated price whether or not he is willing to part with ownership, while the holder of a ‘first refusal’ option is not given the power to compel an unwilling owner to sell, but merely to require the owner, when and if he decides to sell, to offer the property first to the holder of the option”. (Ann., 17 ALR3d 962, § 1, n 1; cf. 77 Am Jur 2d, Vendor and Purchaser, § 49.) The pre-emptive right ripens into an option when the owner has elected to sell (77 Am Jur 2d, Vendor and Purchaser, § 49), and may be enforced by spe"cific performance. (62 NY Jur, Vendor and Purchaser, 16,19.)
.... “The term [pre-emptive right] is used * * * to express the idea that some one has the first right to purchase, when "the land is offered for sale, or the option of buying first”
(Garcia v Callender, supra, p 311; emphasis added). It is said that pre-emptive rights provisions must comply with the rule against perpetuities (Restatement, Property, § 413, subd [1], and Comment). They are “analogous to options upon a condition precedent”. (Restatement, Property, § 413, Comment e, p 2444; see Atchison v City of Englewood, 170 Col 295; Neustadt v Pearce, 145 Conn 403; Roberts v Jones, 307 Mass 504; but see 6 American Law of Property, § 24.1, pp 7-8; cf. Ill Ann Stats, ch 30, 194 [1969] [wherein preemptive rights and options in gross were made not within the rule against perpetuities; however, options in gross were limited to 40 years]; see Ann., 40 ALR3d 920, Pre *747 Emptive Rights to Realty, § 2.) What we are concerned with in this case, may be a pre-emptive right (right of first refusal, “option” to purchase, etc.) and not a true option; however, the determining factor is whether this court will construe such provision as a condition precedent or one subsequent. (See C., infra.)
A. SUSPENSION OF THE POWER OF ALIENATION
EPTL 9-1.1 (subd [a], pars [1], [2]) deals with present or future estates created so as to suspend the power of alienation of land, by any condition, for a period longer than lives in being at the creation of the estate plus 21 years. However, the power of alienation is not suspended when there are persons in being by whom an absolute fee or estate in possession can be conveyed or transferred. (EPTL 9-1.1, subd [a], par [1]; accord Matter of City of New York [Upper N. Y. Bay), 246 NY 1, 29; Williams v Montgomery, 148 NY 519, Epstein v Werbelovsky, 193 App Div 428, 432, affd 233 NY 525, mot to amd remittitur den 235 NY 567; Blankman v Great Western Food Distrs., 57 Misc 2d 754, 756; Matter of Quigley, 37 Misc 2d 320, 323; cf. Matter of Abbondondolo, 10 Misc 2d 418; see, generally, 1 Rasch, Real Property Law and Practice, § 549, pp 335-336; cf. §§ 518, 520.)
At the time of the creation of the agreement in 1967, plaintiff and her husband owned the subject property as tenants by the entirety, and remained in such status until the husband’s death in December, 1979, wherein plaintiff continued to hold under the original grant, no further devise or transfer of title being necessary. (Matter of Maguiere, 251 App Div 337.) During the lives of plaintiff and her husband, they could unite in action on consent and dispose of the property by contract of sale to third parties at any time they wished. (Cf. Azzara v Azzara, 1 AD2d 1012, rearg den 2 AD2d 760, app dsmd 2 NY2d 829; cf. Matter of Reister v Town Bd. of Town of Fleming, 18 NY2d 92.) Following the death of her husband, plaintiff was singularly in possession of a fee simple absolute on the property, and could and can sell it at any time she wishes, however, she is not forced by the agreement to ever sell the property1 *748 if she so desires and such will pass by operation of law to her heirs.
At all times since the creation of the interest there have been persons and will be persons in being who can transfer the fee simple and those who can receive it, be it defendant or her heirs, etc. The power of alienation has not been suspended by the 1967 agreement. Motion for summary judgment by plaintiff on this point is denied.
B. ILLEGAL RESTRAINT ON ALIENATION
One thing that can be certain in these inflationary times is that the value of real property will rise — sometimes more slowly than others, but barring unusual circumstances, it will rise. Plaintiff considered $20,000 adequate compensation should she have sold the subject property in 1967. The property as of December 1, 1979 was appraised at $33,500 and now, a year later is assumably worth even more. Not surprisingly, plaintiff no longer likes the bargain she (and her husband) struck in 1967 and wishes this court to set it aside as void on the further grounds that such arrangement as she agreed to constitutes an illegal restraint on her alienation of her property.
The creators of the Restatement on the Law of Property stated that “ [a] promissory restraint * * * on the alienation of a legal estate in land which is in the form of a provision (a) that the owner of the estate shall not sell the same without first offering to sell to some designated person * * * at a fixed price * * * is valid if, and only if, the restraint is valid under [further restatement provisions, the most cogent of which is whether such restraint was reasonable] ”. (Restatement, Property, § 413, subd [2], par [a]; see § 406, subd [c].) The rationale for such a position was stated to be that “[w]hen * * * the estate must be offered to the designated person [at a fixed price] there is substantial curtailment of the alienability of the land * * * [T]he owner of the estate will be deterred from attempting to sell his property because of the improbability that he will realize the full market value.” (Restatement, Property, § 413, subd [2], par [a], Comment f, p 2444; cf. Leach, Perpetuities in a Nutshell, 51 Harv L Rev 638, 660, 661; Atchison v City of Englewood, 170 Col 295, supra; but see Leach and Tudor, 6 American Law of Property, § 24.1, pp 7, 8.)
*749 Kowalsky v Familia (71 Misc 2d 287), whose reasoning is urged upon this court by plaintiff, dealt with a provision in a 1934 deed which required the defendants to reconvey real property, sold to them by plaintiff’s decedents, termed as an “option to repurchase” to plaintiff or his heirs, etc., for the consideration of $2,000 at any time defendant or his heirs or assigns, etc., offered the property for sale. In 1970 county officials wanted to utilize defendant’s land for a reservoir, offered them $26,000 for the property and threatened condemnation if defendants did not accept. Defendants accepted and gave the county an option to purchase the land for $26,000, which option was accepted by the county. Plaintiffs (the original grantor’s heirs) then notified defendants that they wished to exercise their rights of repurchase for $2,000; however, defendants stated that under the terms of the grant, they had not “offered the premises for sale”.
The Kowalsky court found the true issue was whether the clause in the deed was an invalid restraint on the alienation of the property. The court found the equities of the case to be in favor of voiding the clause due to the fixed price and indefinite time of the option: “[S]ound public policy dictates that the clause be held invalid and void, for not only is there great disparity in the option price and the property’s market value, but also no compelling purpose-justified its imposition or now its enforcement. Not insignificantly, the clause is also unlimited in duration.” (Supra, p 293; emphasis added.)
This situation is to be distinguished in the instant case. Here, the initial grantors (plaintiff and her deceased husband) were not reserving rights for their and their heirs benefit, and were in fact relinquishing them for a consideration deemed by them to be adequate at the time. The true test is whether the “restraint * * * is reasonable in light of the circumstances and purposes sought to be accomplished” thereby, being read against the background of the larger business transaction between the parties. (Levey v Saphier, 83 Misc 2d 146, affd 54 AD2d 959, 960.) Indeed, in this case there “was a valid business purpose sought to be achieved by the restriction” (Kowalsky v Familia, supra, at p 292); that, understanding the defendant’s need for *750 the access gained through the premises at 85 Washburn to the conveyed premises at 79 Washburn, the restraint was agreed to as part of the consideration for the 1967 sale in order to induce defendant’s purchase of such property and guarantee her and her heirs future access through the 85 Washburn property should plaintiff or her heirs, etc., wish to sell such property. Without such a guarantee defendant would not have initially purchased the 79 Washburn premises.
If there is any “unfairness” or “unreasonableness” in these facts, it is that plaintiff, having had the benefit of her initial bargain by selling one piece of property to defendants,-now seeks to avoid her responsibility under the ancillary agreement by terming it “oppressive”, in that the property’s value has now escalated beyond her 1967 demand of $20,000 which she then felt “was a fair consideration for the property”. “The nature of options * * * is that they have 'up’ sides for appreciation and no 'down’ side beyond the cost of holding the opportunity in place.” (Levey v Saphier, 83 Misc 2d 146,150, supra.)
In light of the above, the court finds the holding of Allen v Biltmore Tissue Corp. (2 NY2d 534, 543) more closely analogous and persuasive: “[T]he validity of the restriction on transfer does not rest on any abstract notion of intrinsic fairness of price. To be invalid, more than mere disparity between option price and the current value of [the property] must be shown. * * * Since the parties have in effect agreed upon a price formula which suited them,
- and provision is made for freeing the [land should defendant not wish to exercise her option,] the restriction is reasonable and valid.” Under the. 1967 agreement, defendant would never compel plaintiff to sell the subject property, however, once plaintiff put defendant on notice of her intention to sell, defendant had 60 days to exercise her
- “option” to purchase first, in lieu of which exercise of option, plaintiff would then be free to sell to whatever party she desired. Under the circumstances as existed at the time of the transaction and the bargained for consideration, this did and does not constitute an unreasonable “restraint” on the alienabilty of plaintiff’s land. Motion for summary judgment by plaintiff on this basis denied.
*751 C. THE RULE AGAINST PERPETUITIES — REMOTENESS OF VESTING (EPTL 9-1.1, SUBD [b] )
New York State’s current version of the rule against perpetuities reads as follows: “No estate in property shall be valid unless it must vest, it at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved. In no case shall lives measuring the permissible period of vesting be so designated or so numerous as to make proof of their end unreasonably difficult.” (EPTL 9-1.1, subd [b]; emphasis added.)
This section of EPTL 9-1.1 does not concern itself with suspension of the power of alienation of property (see A., supra) “and it is not satisfied by the fact that there are persons in being who together can give a complete title to a purchaser.” (Leach, Perpetuities in a Nutshell, 51 Harv L Rev 638, 640.)
It is said that the rule against perpetuities is “[f]ounded on the public policy which disapproves the total exclusion of property from social commerce for long periods of time, the rule is aimed against the unreasonable continuance of that sort of indirect restraint on alienation which is accomplished by the creation of future interests, and its purpose is to cut out the limitations which, if allowed to take effect, would produce the consequences desired to be avoided. The purpose of the rule is not punitive.” (70 CJS, Perpetuities, § 2, subd a.)
Exactly what type of estate was formed by the parties in the 1967 agreement? If the court finds that defendant had a future estate subject to a condition precedent (EPTL 6-4.10), i.e., a pre-emptive right, such is subject to the rule against perpetuities (b., supra). If, however, the estate is viewed as one vested subject to a complete defeasance (EPTL 6-4.9) the rule against perpetuities does not apply. (Cf. Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-4.9 [1979-1980 Supp] ; Ann., 40 ALR3d, 920, §3, subd [b]; see 41 Am Jur, Perpetuities and Restraints on Alienation [1st ed], § 31.)
“Estates in property, as to the time of their enjoyment, are classified as estates in possession and future estates.” *752 (EPTL 6-3.1.) “A future estate is an estate limited to commence in possession at a future time, either without the intervention of a precedent estate, or on the determination, by lapse of time or otherwise, of a precedent estate created at the same time.”(EPTL 6-4.2; emphasis added.) Such a future estate may be “in favor of a person other than the creator, namely remainders that are * * * [s] subject to a condition precedent.” (EPTL 6-3.2, subd [a], par [2], d [D].)
“A future estate subject to a condition precedent is an estate created * * * in favor of one or more presently ascertainable persons upon the occurrence of an uncertain event.” (EPTL 6-4.10.) Prior to the enactment of the statute, this future estate was commonly called a “contingent remainder” (Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-4.10 [1979-1980 Supp]). However, defendant was granted a right (“option to purchase”) to purchase the subject property upon the following pertinent “terms and conditions”:
“1) This option and all the rights and privileges hereunder shall be perpetual until the notice hereinafter set forth is given.
“2) This option is to be exercised at such time as the [plaintiff] desires to sell the subject premises, it being the obligation of the [plaintiff] at such time to notify the [defendant] in writing * * * advising [defendant] of [plaintiff’s] intention to sell said premises and the [defendant] shall have within (60) days after receipt of the notice within which to exercise her option to purchase.”
Thus, whatever rights defendant had (has) could be defeated in two ways: (a) if the plaintiff (or her heirs, assigns, etc.) decided never to sell the subject property, defendant’s interest could and would never become possessory, and (b) if, after receiving written notice of plaintiff’s intention to sell, defendant (and/or her heirs), etc.) did not exercise or accept her option to purchase within a 60-day period, defendant’s interest, whatever, was to be explicitly extinguished. (See Terms and Conditions, No. 1, supra.)
In the construction of such provision “[i]t [is] presumed that the creator intended the estate to be valid,” (EPTL 9-1.3, subd [b]), which presumption is designed to avoid *753 violations of the rule against perpetuities whenever possible. (Rohan, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 9-1.3 [1979-1980 Supp].) “[T]his section would clearly support a process of judicial construction which considers the legal consequences of adopting each of the possible interpretations of the language in question.” (Rohan, Practice Commentary, McKinney’s Cons Laws of NY,Book 17B,EPTL9-1.3 [1979-1980Supp].)
If the court views the estate as one subject to a condition precedent (EPTL 6-4.10), i.e., that defendant’s estate is contingent upon the occurrence of an uncertain event, to wit, the intention of plaintiff and/or her heirs, etc., to sell the subject premises, such estate can fail under the rule as it is certainly at least conceivable that plaintiff or her heirs may not decide to sell until a period far beyond the lives in being at the creation of the estate plus the 21-year period. (Cf. Martin v Prairie Rod & Gun Club, 39 Ill App 3d 33; cf. Watergate Corp. v Reagan, 321 So 2d 133 [Fla] ; Points v Barnes, 301 So 2d 102, cert den 312 So 2d 751 [Fla] ; Kershner v Hurlburt, 277 SW2d 619 [Mo] ; but see EPTL 9-1.3, subd [d].)
EPTL 6-4.9 states: “A future estate vested subject to complete defeasance is an estate created in favor of one or more ascertained persons in being, which would become an estate in possession upon the expiration of the preceding estates, but may end or may be terminated as provided by the creator at, before or after the expiration of such preceding estates.” (Emphasis added.)
It is further recognized that “a determination that a future estate is subject to a condition subsequent rather than to a condition precedent is dependent not only on the form and the language of the disposition and the rule of construction brought to bear upon it, but upon the practical consequences which would flow from the choice of one rather than the other.” (Glasser, Practice Commentary, McKinney’s Cons Laws of NY, Book 17B, EPTL 6-4.9 [1979-1980 Supp].) The law also favors the construction of future estates as vested rather than as contingent. (Matter of Krooss, 302 NY 424.)
Viewed in such perspective, defendant’s rights can be said to have vested at the creation of the instrument, sub *754 ject, however, to defeasance (the “condition subsequent” specifically designated as a “condition” in the 1967 agreement) on either the plaintiff or her heirs never intending to sell (which this court considers unlikely) or defendant’s failure to exercise her “option” within 60 days of notice of plaintiff’s intent. (Cf. EPTL 6-5.10.) The vesting is then not so remote as to create a violation of the rule against perpetuities. Given the undisputed collateral business arrangements of the parties in the sale of the adjacent land, the court finds that no contrary intention appears (EPTL 9-1.3, subd [a]), but that the parties were in full agreement at the creation of the estate that defendant was to have a vested interest in the subject land so as to provide for continuing future access to the adjacent land which was contemporaneously conveyed. It has been stated that it might not be desirable to apply the rule against perpetuities to “pre-emptions” providing for a price which the owner is willing to accept (cf. Simes and Smith, Law of Future Interests [2d ed], § 1154). This court feels the instant circumstances favor the construction of such agreement so as to avoid the working of an injustice to defendant, who fairly bargained in good faith for future rights in the subject property, by a plaintiff who has reaped the benefits of the collateral agreement and who now seeks to deny reciprocal enjoyment on the grounds that she no longer feels the initial consideration was adequate. Motion for summary, judgment by plaintiff denied on this issue. (Cf. Dozier v Troy Drive-In Theaters, 265 Ala 93.)
While the court has now denied summary judgment to plaintiff on all issues raised, it has by necessity determined those issues favorably to the defendant’s position. There are no disputed issues of fact raised, the court has thoroughly “searched the record” and the law and accordingly grants summary judgment to defendant. (CPLR 3212, subd [b].) The court finds that the agreement by the parties dated October 25, 1967 is valid and enforceable and as to the “option” on the premises at 85 Washburn Lane, it is not in violation of EPTL 9-1.1 (subds [a], [b]), further, that such agreement does not constiute “restraint” on the alienation of the land.