**UNITED STATES of America, Plaintiff,**

v.

**Jacob FREIDUS, Claire Britt, 601 West 26 Corp., S.L. Building Company, Caesar's World, Inc., Providence Gravure, Inc., Global Leasing Services, Inc., Starrett Restaurant, Inc., Larsen & Toubro, Inc., and Mericor, Inc., Defendants.**

No. 90 Civ. 4813 (RWS).

United States District Court, S.D. New York.

July 15, 1991.

Otto G. Obermaier, U.S. Atty. S.D. New York, New York City, for U.S.; (Steven C. Bennett, Asst. U.S. Atty., of counsel).

Dreyer and Traub, New York City, for defendant S.L. Building Co.; (Noah Nunberg, of counsel).

## OPINION

SWEET, District Judge.

S.L. Building Company ("S.L. Building") has moved under Rule 56, Fed.R.Civ.P., for summary judgment dismissing the complaint by which plaintiff the United States of America (the "Government") seeks to collect, by way of foreclosure of the property 601 West 26th Street, $1.2 million in unpaid taxes, which are owed by Claire Britt Freidus ("Britt"). The Government has cross-moved for summary judgment directing foreclosure. For the reasons set forth below, the motion of the Government is granted and that of S.L. Building denied based upon the findings and conclusions set forth below.

*Prior Proceedings*

This action was filed on July 20, 1990 and certain discovery has been had. The instant motions were argued and submitted on February 15, 1991.

*The Facts*

The following facts have been established by the 3(g) statements submitted by the parties.

S.L. Building is a New York partnership with its principal place of business at 60 East 42nd Street, New York, New York, and is the current fee owner of the property located at 601 West 26th Street, New York, New York. S.L. Building acquired title to the property at public auction held on August 20, 1974, as a result of a mortgage foreclosure proceeding of a third mortgage held by Precision Dynamics Corporation.

On June 21, 1967, Britt entered into a settlement agreement (the "Settlement Agreement") with her husband, Jacob Freidus ("Freidus"), 601 West 26 Corp. (of which Freidus was then the president and principal owner) and other parties, resolving, *inter alia*, matters relating to Britt's divorce from Freidus.

The relevant portions of the Settlement Agreement include:

¶ 1: Jacob Freidus will indemnify Mrs. Freidus and hold her harmless with regard to any income tax claims which may be asserted against her by the United States Government.

¶ 2: [I]f Mr. Freidus permits a tax judgment to be enforced against Mrs. Freidus, ... or suffers the enforcement of a tax lien ... this will be an act of default entitling Mrs. Freidus to proceed against the security.

¶ 3: [A] tax claim is an enforceable claim by the government. So that if Mr. Freidus obtains a stay of the enforcement of the judgment, or bonds a lien, this will not be an act of default.

¶ 4: [A]ny income tax claims which may be asserted against her by the United States Government with respect to

income taxes for the years 1949 through 1964, inclusive, and for New York State income taxes, personal income taxes, for the years 1941 through 1964, inclusive.

The Settlement Agreement also provided:

¶ 5: *Upon such a default, Mr. Freidus shall be entitled to receive written notice* thereof ..., and he shall be entitled to ten days' notice if the amount of the default is less than $5,000, and thirty days notice if it is in excess thereof, *during which period of time Mr. Freidus shall have the opportunity to cure the default.* If he fails to do so, the escrowee ... shall, if he is holding cash, pay over to Mrs. Freidus an amount thereof sufficient to cure the default, and if he is not holding sufficient cash, Mrs. Freidus may direct the sale of the securities which he [the escrowee] is holding in escrow.

It also provided that Freidus would indemnify Britt for any counsel fees that she might have expended "in defending or settling any claims which are covered by these indemnities, if Mr. Freidus fail[ed] adequately to defend or settle them...." and that in the event of a default under the Settlement Agreement, which default was defined as:

¶ 6: Mr. Freidus permit[ting] a tax judgment to be enforced against Mrs. Freidus with regard to the tax years ... recited above [1961 through 1964], or suffers the enforcement of a tax lien with regard to those years, or if Mrs. Freidus has to make expenditures for counsel fees against which she has been indemnified, this will be an act of default,

Britt would be permitted to proceed against the security. On June 26, 1967, Britt, Freidus, 601 West 26 Corp. and others entered into an addendum to the Settlement Agreement and on June 29, 1967, Britt, Freidus and 601 West 26 Corp. entered into a further agreement.

On February 15, 1968, 601 West 26 Corp., by Freidus, created a guarantee (the "Guarantee") which guaranteed Freidus' performance of the Settlement Agreement with Britt. The Guarantee stated that:

601 [West 26 Corp.] consents that *the obligations of Jacob Freidus (or any security therefor) may, at any time* in whole or in part, be renewed, extended, modified, *accelerated,* compromises, settled or released by Claire Freidus.... Claire Freidus shall not be liable for failure to collect or realize upon Jacob Freidus' obligations or any security therefor, or any part thereof, or for any delay in so doing, *nor shall Claire Freidus be under any obligation to take any action whatsoever with regard thereto.* (emphasis added).

On March 29, 1968, 601 West 26 Corp. gave a mortgage to Britt, which was recorded in the office of the City Register of New York County on October 23, 1969 on reel 154, page 1067 (the "Mortgage"), to secure the February 15, 1968 Guarantee. It stated:

[T]he mortgagor herein agrees that *in the event of any default by said Jacob Freidus* under the terms of said indemnity agreement *the holder of this mortgage shall have the option to institute, without notice, and to maintain an action or actions of partial foreclosure* for the sum or sum with respect to which said Jacob Freidus is then in default in connection with said indemnity agreement. (emphasis added).

The Mortgage agreement provides that there might be multiple defaults and partial foreclosures, each of which would be treated separately:

[T]he mortgagor herein agrees that in the event of any default by said Jacob Freidus under the terms of said indemnity agreement *the holder of this mortgage shall have the option to institute,* without notice, and to maintain *an action or actions of partial foreclosure* for the sum or sum with respect to which said Jacob Freidus is then in default in connection with said indemnity agreement. *Said actions of partial foreclosure may be maintained subject to the continuing lien of this mortgage.* It being understood and agreed that *the holder hereof may, from time to time, as defaults occur with respect to said*

*indemnity agreement, maintain one or more actions of partial foreclosure hereof, as such defaults occur.* (emphasis added).

On March 29, 1968, 601 West 26 Corp. was the fee owner of the property located at 601 West 26th Street, New York, New York.

By Judgment of Foreclosure and Sale, dated July 29, 1974, the Supreme Court of the State of New York directed a public sale of the property and further directed that the property be sold:

[S]ubject to state of facts shown on an accurate survey, covenants, easements and restrictions of record, violations, zoning regulations, rights of tenants not parties to this action, and also subject to the lien of a consolidated first mortgage made by 601 WEST 26TH CORP. to THE NEW YORK BANK FOR SAVINGS, dated February 15, 1968 recorded in the Office of the Register of the City of New York, New York County, on February 18, 1968, in reel 277, page 412 ... and also subject to the lien of a mortgage dated March 28, 1968 made by 601 WEST 26TH CORP. to CLAIRE FREIDUS, recorded in the Office of the Register of the City of New York, New York County on October 23, 1969 in reel 151, page 1067.

On December 19, 1979, the United States Tax Court issued its decision in *Freidus, et al v. Commissioner,* Nos. 4317–63, 4319–63, 1205–68, 1206–68, and 1207–68, 1979 WL 3591 regarding Britt's federal personal income tax liability for tax years 1949 through 1960. Britt filed an appeal of this decision with the United States Court of Appeals for the Second Circuit, *Claire Britt v. Commissioner of Internal Revenue,* No. 82–4167 (2d Cir.).

On October 27, 1982, and November 19, 1982, the Internal Revenue Service made assessments of federal personal income tax, penalty and interest against Britt in the total amount of $6,791,987.39, based upon the United States Tax Court decision.

On June 20, 1984, Britt, through her attorneys, offered to settle the case of *Claire Britt v. Commissioner of Internal Revenue,* No. 82–4167 (2d Cir.). The offer for settlement stated:

Mrs. Britt and her attorneys will cooperate fully in attempting to obtain for the Government payment of the $1,200,000 mortgage, which will be assigned to the United States immediately upon acceptance, and in no event later than 30 days of the date of the letter advising of acceptance of the offer.

It also provided:

While the United States will be entitled to keep any property that has been surrendered to it pursuant to the Offer, the liability to the United States will be considered satisfied to the extent of the property so surrendered, and such surrendered amounts will reduce any continuing liability of Mrs. Britt.

On August 2, 1984, Britt, through her attorneys' letter confirmed the June 20, 1984 offer of settlement with clarifications. The letter stated:

[W]e would appreciate your confirmation that upon the satisfaction by Mrs. Britt of the terms of the settlement offer, all Federal income tax liabilities of Mrs. Britt for the years 1949 through 1961, including any interest and penalties, will be extinguished, and that the United States will not, in connection with such Federal income tax liability seek to recover any assets from Mrs. Britt or from those who have purchased her assets pursuant to the settlement agreement.

By letter of August 7, 1984, Glenn L. Archer, Jr., Assistant Attorney General, by Mildred L. Seidman, Chief, Office of Review, Tax Division, Department of Justice, accepted Britt's offer of settlement, as submitted on June 20, 1984 and confirmed on August 2, 1984, stating that:

[A]ll Federal income tax liabilities of Mrs. Britt for the years 1949 through 1961, including interest and penalties, will be extinguished, and the United States will not, in connection with such Federal income tax liability seek to recover any assets from Mrs. Britt or from those who have purchased her assets pursuant to the Settlement Agreement.

On September 5, 1984, Britt, in consideration for the settlement of *Claire Britt v. Commissioner of Internal Revenue*, No. 82–4167 (2d Cir.), assigned the Mortgage to the Internal Revenue Service. The assignment of the Mortgage was recorded in the office of the City Register of New York County on September 14, 1987 on reel 832, page 727.

On October 2, 1985, Britt made a collateral assignment (the "Collateral Assignment") of rights to the Internal Revenue Service. The Collateral Assignment was recorded in the office of the City Register of New York County on October 25, 1985 on reel 976, page 1861.

As a result of the settlement in *Claire Britt v. Commissioner of Internal Revenue*, No. 82–4167 (2d Cir.), there remains outstanding against Britt $1,200,000 in unpaid tax liabilities, to be paid out of the Mortgage.

On January 14, 1986, the Internal Revenue Service, through the United States Department of Justice, gave notice to Freidus of a default under the terms of the Settlement Agreement dated June 21, 1967. At no time has Freidus made any payments of Britt's tax obligations within the meaning of the Settlement Agreement.

This action was filed on July 20, 1990. On November 14, 1990 Britt and the Government filed a stipulation so ordered by the court which provided that:

> [A]s a result of the settlement in *Claire Britt v. Commissioner of Internal Revenue*, No. 82–4167 (2d Cir.), there remains outstanding against Britt $1,200,000 in unpaid tax liabilities, to be paid out of the March 29, 1968 Mortgage.

*Summary Judgment Is Appropriate*

The material facts as found above are set forth in the Government's 3(g) statement and in the S.L. Building's 3(g) statement. The June 21, 1967 Settlement Agreement, the February 15, 1968 Guarantee, and the March 29, 1968 Mortgage, are not disputed except as to the dispute concerning the legal interpretation of these documents which does not present a "genuine issue of material fact." As a general matter, the interpretation of contracts is a question of law, not fact. *See e.g., Nicholas Laboratories, Ltd. v. Almay, Inc.*, 900 F.2d 19 (2d Cir.1990) ("the interpretation of the words of a contract is generally a question of law"); *Network Pub. Corp. v. Shapiro*, 895 F.2d 97 (2d Cir.1990) (same) (citing *Eddy v. Prudence Bonds Corp.*, 165 F.2d 157, 163 (2d Cir.1947) (L. Hand, J.)). Thus, no material facts are in dispute.

## I. This Action Is Not Barred By The Statute Of Limitations

S.L. Building has moved to dismiss the Government's action to foreclose on the Mortgage as time barred under state law or as a contract action under Federal law, relying upon, respectively, Section 213(4) of the New York Civil Practice Law and Rules ("CPLR") and 28 U.S.C. § 2415(a) for that proposition.

### 1. *28 U.S.C. § 2415(a) Does Not Bar This Action*

In an action to collect on an assessment of tax, a six-year statute of limitations applies. 26 U.S.C. § 6502(a) ("Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—(1) within six years after the assessment of the tax"). If an assessment is based on a decision of the Tax Court, however, the six-year period of limitations for collection of an assessment is tolled "until the decision of the Tax Court becomes final," plus an additional 60 days. 26 U.S.C. § 6503(a)(1). *See* M. Saltzman, *IRS Practice and Procedure* ¶ 5.05 at 5–25 (1981) ("While the assessment triggers the running of the period of limitations on collection, the running of the period is suspended until the Tax Court decision becomes final."). A Tax Court decision, in turn, does not become final until the termination of any appeal from the decision. 26 U.S.C. § 7481(a) ("the decision of the Tax Court shall become final ... (2)(A) if the decision of the Tax Court has been affirmed or the appeal dismissed").

S.L. Building does not question the fact that the assessments based on the decision of the Tax Court were timely made within three years after the filing of an income tax return. 26 U.S.C. § 6501(a). The IRS made its assessments in October and November of 1982, less than three years after the date of the Tax Court decision, and in any event, before the Tax Court decision became final upon the dismissal of Britt's appeal in 1984.

Since the Tax Court decision did not become final until September 10, 1984, the Government was entitled to bring an action to collect on its assessment of Claire Britt's taxes up until November 10, 1990. *See* 26 U.S.C. § 6502(a) (six-year period of limitations); 26 U.S.C. § 6503(a)(1) (tolling until 60 days after Tax Court decision final).

### 2. *CPLR § 213(4) Does Not Bar This Action*

■ As a general rule, and as S.L. Building concedes, "the United States is not subject to any statute of limitations in enforcing its rights unless Congress explicitly provides otherwise." *United States v. Podell*, 572 F.2d 31, 35 n. 7 (2d Cir.1978); *see United States v. John Hancock Mutual Life Ins. Co.*, 364 U.S. 301, 308, 81 S.Ct. 1, 6, 5 L.Ed.2d 1 (1960) ("the United States is not subject to local statutes of limitations"); *Guaranty Trust Co. v. United States*, 304 U.S. 126, 132–33, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938) (citing rule and its history); S.L. Building Mem. at 7 ("[u]nder most circumstances the [Government] is not subject to local statutes of limitations").

■ S.L. Building, however, cites three cases for the proposition that an assignee's contract rights are derived from those of the assignor and that the assignee, "even if it is the United States Government, may not acquire better rights tha[n] its assignor and is bound by ... the applicable statute of limitations." S.L. Building Mem. at 7 citing *FDIC v. Forte*, 109 Misc.2d 546, 440 N.Y.S.2d 500 (Nassau Co.Spec.Term 1981), *aff'd*, 94 A.D.2d 59, 463 N.Y.S.2d 844 (2d Dep't 1983); *Deitrick v. Standard Surety & Casualty Co.*, 303 U.S. 471, 58 S.Ct. 696,

82 L.Ed. 962 (1938); and *United States v. Alessi*, 599 F.2d 513 (2d Cir.1979) (per curiam).

In *Forte*, the question presented was whether provisions of the New York Real Property Actions and Proceedings Law ("RPAPL"), which require appraisal of property before sale, applied to a proceeding instituted by the Federal Deposit Insurance Corporation ("FDIC"), which sought a deficiency judgment against the maker of a promissory note. The *Forte* Court held that the RPAPL applied, noting (1) "the statute creating the [FDIC] ... is silent as to whether State Law or Federal Law should apply in cases where, following foreclosure of a mortgage, a deficiency exists, and it is also silent as to whether an appraisal is required," *id.*, 440 N.Y.S.2d at 501; and (2) "[t]here is no federal statute or overriding policy which confers on the FDIC as the liquidator or receiver greater powers than the bank itself had before insolvency," *id.*, 440 N.Y.S.2d at 502.

However, the *Forte* rule has been limited to its circumstances. *See FDIC v. Fisher*, 727 F.Supp. 1306, 1311 n. 6 (D.Minn.1989) (the *Forte* court "limited its holding that New York law applied to the foreclosure of a mortgage by explicitly confining it to situations where 'there is no Federal statute or overriding national policy' ") (citation omitted). The *Fisher* court, for example, refused to apply the *Forte* rule to a case where the makers of promissory notes sought to assert various state defenses (including accord and satisfaction, novation, conversion, and lack of holder in due course status) to an action by the FDIC based on various promissory notes. *See Fisher*, 727 F.Supp. at 1310 ("There is no question that federal law controls this case.").

In *Deitrick*, the maker of a guaranty bond sought to set up the defense of fraud in an action by a Government receiver. The Court, without detailed analysis, ruled that "the receiver stands no better than the bank." 303 U.S. at 480–81, 58 S.Ct. at 701. Four years later, however, in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court held that, in an action by the FDIC to collect on a note, "the liability of [the

**1272**

maker] on the note involves decision of a federal, not a state, question...." *Id. See, e.g., FDIC v. Meo,* 505 F.2d 790, 793 n. 4 (9th Cir.1974) ("federal law controls in cases involving the rights of the FDIC").

The *Alessi* Court did not apply a state statute of limitations; it applied federal law. Nor does the *Alessi* decision suggest that an action by the United States to collect on tax liabilities is subject to any state defenses. None of the cases cited by S.L. Building involve tax collection, and none involve state statutes of limitations.

### 3. *Action To Collect On Assessment Not Barred By § 2415(a)*

■ Characterizing this action as one to collect on an assessment rather than to enforce a contract, gives rise to the application of the federal statute of limitations. S.L. Building further argues, however, that 28 U.S.C. § 2415(a) bars this action on the grounds that the Government's action is to enforce a contract, citing § 2415(a)'s provision that "every action for *money damages* brought by the United States or an officer or agency thereof *which is founded upon any contract* ... shall be barred unless the complaint is filed within six years after the right of action accrues...." 28 U.S.C. § 2415(a) (emphasis added).

Section 2415(a) is inapplicable to the instant action on its face: the Government seeks to collect on a tax judgment. Section 2415, moreover, separately states that the statute of limitations does not apply to any "actions brought under the Internal Revenue Code or incidental to the collection of taxes imposed by the United States." 28 U.S.C. § 2415(h).

Nor does the Government's execution of the offer of settlement with Britt require a characterization of this action other than as one to collect an assessment. In *Golub v. United States,* 74–2 U.S.T.C. ¶ 9566, 498 F.2d 1405, 204 Ct.Cl. 935 (1974), for example, the Government brought an action to collect taxes owed pursuant to a "collateral agreement" that settled a taxpayer's obligation to pay certain tax deficiencies. The taxpayer contended that the Government's right to proceed on the collateral agreement had terminated. The Court of Claims rejected that assertion, noting that Section 2415(h) "expressly excludes actions 'incidental to the collection of taxes imposed by the United States.'" *Id.* at 84, 781.

Similarly, in a series of decisions with regard to the Surface Mining Control and Reclamation Act, courts have concluded that actions to collect delinquent reclamation fees, which are owed as a consequence of statute, not by contractual agreement, are not subject to the limitations provisions of Section 2415(a). *See, e.g., United States v. Tri–No Enterprises, Inc.,* 819 F.2d 154, 158 (7th Cir.1987) (where company never entered into agreement to pay delinquent fees, Section 2415(a) did not apply); *United States v. E & C Coal Co.,* 647 F.Supp. 268, 273 (W.D.Va.1986) ("[T]he payment of the reclamation fees is not a contractual situation between the government and the defendant."); *United States v. Davis,* No. CV 84–4653, 1985 WL 8036 (S.D.Ill. Sept. 16, 1985) (same); *but see United States v. Gary Bridges Logging & Coal Co.,* 570 F.Supp. 531, 533 (E.D.Tenn.1983) (action for fees construed as contractual action where company entered into installment agreement with government to pay delinquent fees); *United States v. Hawk Contracting, Inc.,* 649 F.Supp. 1 (W.D.Pa. 1985).

This case is "brought under the Internal Revenue Code or incidental to the collection of taxes imposed by the United States," within the meaning of 28 U.S.C. § 2415(h) since it is expressly denominated as an action pursuant to 26 U.S.C. §§ 7401, *et seq* (civil actions for the recovery of taxes), brought on behalf of the Internal Revenue Service and predicated on a judgment of the Tax Court with respect to Britt's personal income tax liabilities, and the subsequent assessment by the IRS of more than six million dollars in tax liability. *See* Complaint ¶ 2. It seeks a judgment, *inter alia,* that Britt pay $1,200,000 in unpaid tax liabilities, such judgment to be satisfied by collection on a mortgage.

### 4. Mortgage Foreclosure Actions Not Barred By § 2415(a)

■ Section 2415 contains a second express exemption from the statute of limitations. Under 28 U.S.C. § 2415(c), Section 2415(a) is limited such that "[n]othing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property." Courts have routinely applied this provision in holding that mortgage foreclosure actions brought by the federal government are not governed by 28 U.S.C. § 2415(a). *See, e.g., United States v. Copper,* 709 F.Supp. 905, 907 (N.D.Iowa 1988) (holding that, in action to enforce SBA loan, even if Section 2415(a) bars an action to enforce a debt, "the statute in no way limits the government's right to foreclose a mortgage given to secure said debt"); *Curry v. SBA,* 679 F.Supp. 966, 970 (N.D.Cal. 1987) (statute of limitations under Section 2415(a) did not bar SBA from exercising power of sale in deed of trust); *Cracco v. Cox,* 66 A.D.2d 447, 414 N.Y.S.2d 404, 406 (4th Dep't 1979) (Section 2415(a) inapplicable in FHA action to foreclose mortgage).

In *Cracco v. Cox,* 66 A.D.2d 447, 414 N.Y.S.2d 404 (4th Dep't 1979), the Fourth Department examined the text and history of Section 2415(a) in detail and concluded that the Section did not apply to an action by the United States to foreclose on a mortgage given to the FHA to secure a loan. The *Cracco* court recognized:

> It is a long-standing rule that the right to foreclose a mortgage securing a debt is distinct from the right to bring an action for money damages on the note or bond representing the debt. Congress recognized and preserved this distinction and intended that Section 2415 apply only to actions for damages.

*Id.,* 414 N.Y.S.2d at 405. Further, the court emphasized that "the right to foreclose survives [even] when an action on the debt is barred by the statute of limitations." *Id.,* 414 N.Y.S.2d at 406 (citing *Union Bank of Louisiana v. Stafford,* 53 U.S. (12 How.) 327, 340–41, 13 L.Ed. 1008 (1851); *Hulbert v. Clark,* 128 N.Y. 295, 28 N.E. 638 (1891)). Upon reviewing this his-tory of the distinction between mortgage and contract actions, and the language and history of Section 2415(a), the *Cracco* court concluded:

> Nowhere is there an indication that section 2415(a) is to apply to any other type of action or that it was intended to effect a sweeping change in the general rule that limitation periods do not govern actions brought by the United States.

*Id.,* 414 N.Y.S.2d at 406. The *Cracco* rule has been expressly approved by other courts. *See, e.g., Gerrard v. United States Office of Educ.,* 656 F.Supp. 570, 574 (N.D.Cal.1987) (applying *Cracco* rule and holding that Section 2415(a) did not prevent Government from seeking recovery of unpaid student loans in tax refund proceeding); *Curry v. SBA,* 679 F.Supp. 966, 970 (N.D.Cal.1987) (applying *Cracco* rule and holding that Section 2415(a) did not bar SBA from exercising power of sale in deed of trust).

According to S.L. Building, the *Cracco* rule is limited to circumstances where the federal government seeks to collect on a mortgage for a loan made by the government, and, therefore, does not apply when the government takes the loan by assignment. S.L. Building Mem. at 7 n. 1. Under S.L. Building's view, all mortgage foreclosure actions are contract actions, unless they involve mortgages originally granted to the federal government.

However, in cases in which the government is an assignee of claim, courts have looked to the time of assignment when applying the statute of limitations. In *United States v. Matthews,* 1988 WL 76567, 1988 U.S.Dist.LEXIS 7521 (E.D.N.Y.1988), the United States sought to foreclose on a mortgage that was originally held by a bank. Thereafter, the bank assigned the mortgage to the Small Business Administration. The *Matthews* court, applying the *Cracco* rule, concluded that Section 2415(a) "does not apply to mortgage foreclosure claims." *Id.* The *Matthews* court expressly held that, so long as the assignment of the mortgage from the bank to the SBA occurred within the period of limitations, "the mortgage had value at

the time of the assignment, and the action to foreclose is not time-barred." *Id.*

S.L. Building suggests that *Matthews* is at odds with *United States v. Alessi,* 599 F.2d 513 (2d Cir.1979) (per curiam). The *Alessi* court, however, did not hold that Section 2415(a) applies to all mortgage foreclosure actions. In *Alessi,* the government moved for the foreclosure and sale of property mortgaged to the Veterans Administration. The issue before the court was whether the cause of action for foreclosure accrued at the time of the default or at the time that the government elected to foreclose, *i.e.,* upon initiation of suit. The *Alessi* court held that the government's cause of action accrued at the time of election to foreclose, and that the action, therefore, was timely. In a footnote, the *Alessi* court referred to 28 U.S.C. § 2415(a). *See Alessi,* 599 F.2d at 515 n. 4. This reference, however, did not amount to a "holding" that Section 2415(a) applies to all mortgage foreclosure actions.

Neither party has cited a case that has relied on *Alessi* for the proposition that Section 2415(a) applies to a mortgage foreclosure action. Although S.L. Building has cited *United States v. Roach,* Civ. No. 85–2521–S (D.Kan. Aug. 29, 1986), that case was not an action to foreclose on a mortgage. In *Roach,* the Veterans Administration guaranteed a loan to a veteran. After default, and payment by the VA on the guarantee, the VA sought to collect the amount of its payment from the veteran. The *Roach* court concluded that 28 U.S.C. § 2415(a) provided the applicable statute of limitations because "this action is clearly for money damages brought by the United States on an express contract." *Id.* The *Roach* court cited *Alessi* for the proposition that in contract actions governed by that statute, "the government's right of action accrues not at the time of default, but on a date when a claim first could be sued upon by the government." *Id.*

In any case, the Government's claim here, under the rule in *Alessi,* did not accrue until the government sent a demand letter, on January 14, 1986, less than five years before the government brought suit.

In *Alessi* the Second Circuit determined that where a mortgage bond provided that the whole of an obligation under the bond would become due and payable "at the option of the obligee," if any default in payment occurred, the principal under the bond did not become due until the government elected to demand payment, in the form of bringing suit. *See Alessi,* 599 F.2d at 515 & n. 3.

The instruments at issue in this case contain optional language similar to the facts in *Alessi.* The Mortgage itself states that the obligee has the option to foreclose in the event of any default. The Guarantee further indicates that, in the event of a default, the obligee has the option to pursue the security, but is not obligated to do so.

## II. Freidus' Default, If Any, Does Not Bar This Action

The Settlement Agreement, which spells out Freidus' obligation to pay Britt's income tax obligations, provides as set forth above in ¶ 5:

> Upon such a default, Mr. Freidus shall be entitled to receive written notice thereof ..., and he shall be entitled to ten days' notice if the amount of the default is less than $5,000, and thirty days notice if it is in excess thereof, during which period of time Mr. Freidus shall have the opportunity to cure the default. If he fails to do so, the escrowee ... shall, if he is holding cash, pay over to Mrs. Freidus an amount thereof sufficient to cure the default, and if he is not holding sufficient cash, Mrs. Freidus may direct the sale of the securities which he [the escrowee] is holding in escrow.

Under the *Alessi* rule, where the obligee has the option not to require immediate payment in the event of a default, the time to bring an action to enforce the obligor's obligations and pursue any security only begins to run after the obligee has made a demand for payment. In the instant case, no such demand was made until January 14, 1986, when the government made demand for payment upon Freidus.

According to S.L. Building the time to bring any action to foreclose on the mortgage began to run upon the first default in obligations by Freidus, either at the time defaults occurred in 1979, when the Tax Court rendered a decision against Britt (and Freidus did not pay), or in 1982, when the IRS assessed income tax liability against Britt (and Freidus did not pay), or at some unstated time when Britt incurred defense costs in connection with the Tax Court proceeding (and Freidus did not pay).

As discussed above, Britt's obligation to pay her income tax liabilities did not become final until September 10, 1984, when her appeal to the Second Circuit was dismissed. Thus, the issuance of the decision of the Tax Court and the making of assessments of income tax liability did not trigger events of default within the meaning of the Settlement Agreement.

Indeed, the Settlement Agreement expressly contemplated that the issuance of a decision by the Tax Court and the making of assessments of income tax liability would not trigger events of default. Until Britt's appeal to the Second Circuit was dismissed, no judgment or liens were enforced against her, and no events of default occurred.

Finally, S.L. Building claims that an event of default occurred when Britt incurred counsel fees in connection with her tax litigation, and the fees were not paid by Freidus. S.L. Building Mem. at 9. However, the factual support for that contention is made by a non-party upon information and belief. Further, even assuming that the assertion is true, it does not demonstrate that an event of default occurred, or that it was not cured. As the Settlement Agreement provided, a default might occur "if [Britt] has to make expenditures for counsel fees against which she has been indemnified," *i.e.*, if Freidus did not pay those fees.

Finally, even assuming: (1) that Britt incurred counsel fees, (2) that Freidus did not pay them, (3) that these events constituted a partial default, and (4) that Britt gave notice of default, such that the time for collecting on the security to enforce the obligation to pay these fees began to run, this partial default would not preclude the government from collecting on the remaining obligation to pay Britt's tax obligations. As a general matter:

[a] mortgagee's failure to commence an action within the limited period on default in the payment of an installment under a mortgage does not preclude him from later suing for and recovering later unpaid installments in an action brought within the statutory period.

78 N.Y.Jur.2d, *Mortgages* § 441 at 301 (1989). Thus, if one event of default occurs, and the statute of limitations runs as to that default, the obligor cannot claim that the statute of limitations protects him from performing on all his other obligations.

The terms of the instruments at issue here confirm that basic understanding. Under the Settlement Agreement, for example, if an event of default occurred, Britt was entitled to pursue certain security, by forced sale if necessary. If the proceeds of the sale were in excess of Freidus' obligations at the time, "[t]he proceeds of any such sale will be held by the escrowee as security as well." Settlement Agreement at 18. Thus, the Settlement Agreement expressly contemplated that various events of default might occur, and that each would be treated as a separate incident.

The Mortgage agreement provides that there might be multiple defaults and partial foreclosures, each of which would be treated separately.

## III. The Rule Against Perpetuities Does Not Apply

■ S.L. Building seeks to bar the government's action as a violation of the rule against perpetuities. The rule against perpetuities codified in New York provides:

No *estate* in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate and any period of gestation involved.

N.Y.Est.Powers & Trusts Law ("EPTL") § 9–1.1(b) (McKinney 1967) (emphasis added).

Under common law definition of a mortgage, such instruments create no "estates" in property that could be subject to the rule against perpetuities. The encyclopedic New York Jurisprudence, citing a host of New York cases, states that:

> A mortgage on real property creates no estate in land but is merely security for a debt or other obligation. A mortgage has been variously described as a lien, a lien to secure a debt, a lien remedy, an encumbrance, and as security, upon the mortgaged premises as an incident to the debt which it is intended to secure.

77 N.Y.Jur.2d, *Mortgages* § 2 at 374; *see, e.g., Boyarsky v. Froccaro*, 125 Misc.2d 352, 479 N.Y.S.2d 606, 612 (Nassau Co.Sup. Ct.1984) ("mortgage" imports a debt or obligation to be secured, due from the mortgagor to the mortgagee); *Rivera v. Blum*, 98 Misc.2d 1002, 420 N.Y.S.2d 304, 308 (N.Y.Sup.Ct.1978) ("mortgage" is the security for a debt representing a lien on the mortgaged premises). As a result, "[a] mortgage is generally considered to be personal property. It is not chattel real." 77 N.Y.Jur.2d, *Mortgages* § 3 at 375; *see Flyer v. Sullivan*, 284 A.D. 697, 134 N.Y.S.2d 521, 523 (1st Dep't 1954) ("It has long been the law that a bond, or other obligation, secured by a mortgage lien on realty, is a chose in action and constitutes personal property."). Indeed, the EPTL defines any "[d]ebts secured by mortgages" as a species of personal property for purposes of administration of a decedent's estate. EPTL § 13–1.1(a)(7). *See In re Estate of Caperonis*, 95 Misc.2d 690, 408 N.Y.S.2d 231, 234 (Saratoga Co.Surr.Ct. 1978) (bond located in New York and secured by mortgage on New York realty was to be considered personal property).

The Mortgage here was a true mortgage, and not some other form of instrument that might be construed as an "estate" subject to the rule against perpetuities. As a general matter, "[a] mortgage is defined as any conveyance of land intended by the parties at the time of making it to be security for the payment of money or the doing of some prescribed act." 77 N.Y.Jur. 2d, *Mortgages* § 1 at 373 (1989). Further, the Mortgage recites that it is made "to secure the payment of an indebtedness in the sum of [$1,200,000]" and was granted as "additional collateral security pursuant to a certain agreement of settlement dated June 21, 1967."

The documents surrounding the Mortgage comport with the view that the Mortgage is a security interest, not an "estate." The Settlement Agreement, for example, referred to the mortgage as a "guarantee mortgage" and "collateral security." *See* Settlement Agreement at 20, ("601 West 26 Corp. will execute and deliver a guarantee mortgage in the amount of $1,200,000 as collateral security in order to enforce the guarantees of [Freidus'] obligations to [Britt]."). In addition, the Guarantee by 601 West 26 Corp. recited that Britt had the immediate right to transfer her interest in this and all other security ("any security or liens for Jacob Freidus' obligations may, from time to time, in whole or in part, be exchanged, sold, released, surrendered or otherwise dealt with by [Britt] ...").

The few New York cases cited by S.L. Building, involving rights of first refusal, *Kowalsky v. Familia*, 71 Misc.2d 287, 336 N.Y.S.2d 37 (Orange Sup.Ct.1972), or options on land *Izzo v. Brooks*, 106 Misc.2d 743, 435 N.Y.S.2d 485 (Rockland Sup.Ct. 1980), are not persuasive. Indeed, the *Kowalsky* and *Izzo* rule, in any event, was disapproved by *Metropolitan Transp. Authority v. Bruken Realty Corp.*, 67 N.Y.2d 156, 164, 492 N.E.2d 379, 383, 501 N.Y.S.2d 306, 310 (1986) (referring to view that preemptive rights could ever be subject to the rule against perpetuities as "contrary to established principles of law").

## IV. The Government Is Entitled To Enforce The Mortgage

■ It is well settled that:

> a mortgagor is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of waiver by the mortgagee, or estoppel, or bad faith, fraud, oppressive or unconscionable conduct on the latter's part.

*Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 183, 436 N.E.2d 1265, 451 N.Y.S.2d 663 (1982); *see Weiss v. Croce*, 167 A.D.2d 465, 561 N.Y.S.2d 927 (2d Dep't 1990) (same); *Dimacopoulos v. Consort Development Corp.*, 166 A.D.2d 631, 561 N.Y.S.2d 59 (2d Dep't 1990) (same); *Massachusetts Mutual Life Ins. Co. v. Transgrow Realty Corp.*, 101 A.D.2d 770, 475 N.Y.S.2d 418 (1st Dep't 1984). Thus, where the mortgage holder establishes the basic elements of a cause of action for foreclosure, the mortgage holder is entitled to a presumptive right to collect, which can only be overcome by an affirmative showing from the defendant.

■ In an action to foreclose on a mortgage, the essential requirements of the plaintiff's case are proof of the existence of an obligation secured by a mortgage, and a default on that obligation. In *Northeast Savings, F.A. v. Rodriguez*, 159 A.D.2d 820, 553 N.Y.S.2d 490 (3d Dep't 1990), for example, the court concluded that a valid cause of action for foreclosure was made out on these elements:

> Plaintiff's documentary evidence establishes a valid mortgage. Given defendant's admission that there is an unpaid balance past due on the mortgage and receipt of the foreclosure notice, plaintiff has made a prima facie showing of entitlement to summary judgment.... To successfully withstand plaintiff's motion, defendant was obliged to demonstrate a bona fide defense to the mortgage.

*Id.*, 553 N.Y.S.2d at 492.

In the instant case, the documents attached to the Government's complaint, all of which are conceded to be genuine, establish both the existence of an obligation and a default. The Settlement Agreement recognized an obligation owed by Freidus to indemnify Britt with regard to income tax claims. Settlement Agreement ¶ 1. Separately, 601 West 26 Corp. agreed to guarantee the performance by Freidus of his obligation to Britt. As security for the Guarantee, 601 West 26 Corp. gave a mortgage to Britt securing Freidus' obligation to pay Britt's federal tax obligation. Britt's rights under the Settlement Agreement, Guarantee, and Mortgage were validly transferred to the government.

Further, there has been a default upon the obligations. The Government assessed more than $6 million in taxes, interest, and penalties against Britt and as a result of the settlement in *Claire Britt v. Commissioner of Internal Revenue*, No. 82–4167 (2d Cir.); there remains outstanding against Britt at least $1,200,000 in unpaid tax liabilities, to be paid out of the March 29, 1968 Mortgage. Despite a demand by the government, Freidus has not paid any of Britt's tax obligations.

To defeat the government's claim, S.L. Building maintains that by settling with Britt in 1984, the Government extinguished all her remaining tax obligations, and that, as a result, the government cannot enforce the mortgage it received from Britt.

It is evident that the offer for settlement had as its principal intent the collection by the Government of all the assets of Britt that were available to satisfy the more than $6 million in income tax, penalty, and interest that the government had been awarded in the Tax Court proceeding. For example, the original proposal for settlement made by Britt stated that, within 30 days after settlement, Britt would transfer all her assets to the government, with the exception of clothing, personal effects, and certain other items. The offer for settlement, moreover, specifically stated that part of the intent of the parties was to permit the Government to collect on the $1.2 million mortgage.

Britt's counsel outlined, in a separate letter, a request for recognition that, when compliance with the terms of the offer for settlement was complete, the Government would not seek to gather any further assets from her. The Government specifically accepted this offer, conditioned on full compliance with the terms of the settlement offer. In order to comply fully with the terms of the settlement offer, of course, Britt was required to "cooperate fully in attempting to obtain for the Government payment of the $1,200,000 mortgage." Thus, until the mortgage was

paid, Britt's tax obligations were not extinguished.

To the extent that any doubt about the intent of the parties remained, Britt removed that doubt in a stipulation and order filed with the court. The stipulation and order expressly provided that Britt admitted the critical allegations of the complaint. Further, Britt has consented to the entry of judgment for the Government, including a declaration that "plaintiff United States is entitled to foreclose on the March 29, 1968 Mortgage to satisfy and collect $1,200,000 in Defendant Britt's unpaid tax liabilities."

According to S.L. Building, the transfer of the mortgage without transfer of the underlying guarantee was void, and as a result, the Government is not entitled to foreclose on the mortgage. However, as further recognized in the stipulation and order, at least $1.2 million in unpaid tax liabilities remain to be collected from the proceeds of the mortgage.

S.L. Building asserts that "a cause of action for indemnification does not accrue until the judgment is paid." S.L. Building Mem. at 14. However, here the judgment was paid in the form of transfer of the $1.2 million mortgage.

Indeed, well-settled authority in New York recognizes that "for the sake of fairness and judicial economy," an indemnity claim may be pursued even before a judgment has been paid. *See Burgundy Basin Inn, Ltd. v. Watkins Glen Grand Prix Corp.*, 51 A.D.2d 140, 379 N.Y.S.2d 873, 880 (4th Dep't 1976) (citing authority).

S.L. Building also has recited the rule that "assignment of a mortgage without an underlying obligation is a nullity," S.L. Building Mem. at 14, and has contended that because the Collateral Assignment of Britt's rights under the Guarantee came after her assignment of the Mortgage, the Mortgage now holds no value and the government is not entitled to foreclose. If the tax obligations remained after the settlement offer was concluded, and Britt intended to convey both the mortgage and her rights to indemnification from Freidus and the Guarantee by 601 West 26 Corp. to pay on that indemnification, then the transfer of the Mortgage, and subsequent transfer of the indemnification and guarantee rights were valid:

> [P]hysical delivery of the original note is not mandatory since the mortgage assignment, when accepted and recorded, transfers the interest in the note and mortgage by operation of law ..., whereas here there is no doubt that there is an intent to so transfer the interest in the note and mortgage.

*Felin Associates, Inc. v. Rogers*, 38 A.D.2d 6, 326 N.Y.S.2d 413, 415 (1st Dep't 1971) (citing cases).

Here, in consenting to the settlement offer, Britt intended to make a valid transfer of all her rights to collect on the $1.2 million mortgage under the Settlement Agreement and the Collateral Assignment. In executing the settlement offer, the Government and Britt plainly intended a valid transfer of rights in the mortgage.

*Conclusion*

Because the Government action seeks to enforce a tax obligation, it is not time barred, nor is the mortgage sought to be enforced subject to the rule against perpetuities. Freidus having defaulted, the Government is entitled to enforce Britt's rights appropriately assigned to it.

Enter judgment on notice.

It is so ordered.